## Commonwealth v. Exler, Appellant.

*Criminal law—Statutory rape—Murder—Former acquittal.*

Consensual or statutory rape is not a constituent of murder. A verdict for statutory rape cannot therefore be returned upon an indictment charging murder.

If a person has been convicted of murder in the first degree, death occurring in consequence of the statutory rape of a child under sixteen years of age, and the conviction has been set aside, the defendant on a subsequent trial for the statutory offense cannot set up the plea of twice in jeopardy as a defense. Since he could not have been convicted of this offense at the first trial, he is not twice in jeopardy at the second.

*Criminal law—Rape—Statutory rape—Evidence—Circumstantial evidence—Act of May 19, 1887, P. L. 128.*

To carnally know and abuse a woman child under the Act of May 19, 1887, P. L. 128, there must be a penetration or an attempt to have intercourse. This may be shown by circumstantial evidence; but such evidence, both as to the fact of a crime committed, and its author if the victim is dead, should be such as to exclude all rational theories but that the crime was committed, and the accused was its author; and great care should be taken that this proof should be clear and unequivocal. A conviction based upon such evidence will be sustained.

*Criminal law—Jury—Challenges.*

On the trial of an indictment for statutory rape it is proper practice to call all the jurors into the box, examine them on their voir dire, and make the challenges in the manner provided by the Act of July 9, 1901, P. L. 629, before the persons called are sworn as jurors.

*Criminal law—Jurors—Challenge—Opinion of juror.*

A challenge of a juror for cause in a criminal case is properly overruled, where the juror in his voir dire states that he has read of the case, and had formed and expressed an opinion as to the guilt of the prisoner, but could try and decide the case from the evidence unaffected by such former opinion.

*Criminal law—Seizure of prisoner's clothing to be used as evidence.*

On the trial of a criminal indictment it is not error for the court to refuse a motion to compel the district attorney to return certain clothing of the defendant, which was seized without a search warrant, and was intended to be used as evidence at the trial.

*Criminal law—Remarks of district attorney.*

On the trial of an indictment for statutory rape where the victim is dead and the evidence against the defendant is wholly cir-

cumstantial, it is not reversible error for the court to refuse to withdraw a juror because the district attorney said: "It is hard work to defend a guilty man, it is always hard work to defend one as guilty as he, as we will show he is by the evidence that we have offered in this case," and also used other language strongly condemnatory of the accused.

*Criminal law—Evidence—Photograph—Cross-examination.*

On the trial of an indictment for statutory rape, where it appears that the victim was dead, and a witness identifies the girl from a photograph in evidence, but the testimony of the witness is weakened on cross-examination, the testimony is for the jury's consideration, and a point virtually withdrawing such evidence from the jury's consideration is properly refused.

Argued April 16, 1915.  Appeal, No. 132, April T., 1915, by defendant, from judgment of O. & T. Allegheny Co., March Sessions 1914, No. 12, on verdict of guilty in case of Commonwealth v. Edward Exler.  Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.  Affirmed.

Indictment for statutory rape.  Before MACFARLANE, HAYMAKER, BROWN, JJ., and SLOAN, J., specially sitting. See Com. v. Exler, 243 Pa. 155.

From the record it appeared that the defendant was about twenty-five years old, that his victim was twelve and one-half years old, and that the crime was committed on November 27, 1912.

The circumstantial evidence as to the crime is summarized in the opinion of the Superior Court.

At the trial the court permitted all the jurors to be called into the box, after which they were examined on their voir dire and challenges were made (8, 9).

A. H. Willis, a juror, was examined as follows:

By Mr. Wolf:

Q. Mr. Willis, where do you live?

A. Baldwin Township.

Q. Have you heard of the Edward Exler case?

A. Yes, sir.

Q. Have you ever formed or expressed an opinion as to the guilt or innocence of Edward Exler?

A. Yes, sir, I did.

Challenged for cause by defendant.

By the Court:

Q. You formed an opinion at that time?

A. Yes, sir.

Q. Is that a fixed opinion, have you still that opinion?

A. Well, no.

Q. If you were sworn as a juror in this case could you try it and decide it upon the evidence that would be introduced in the case?

A. Yes, sir.

Q. Unaffected by your former judgment or your former opinion?

A. Yes, sir.

Q. Were you acquainted with the details of the case at the time of the trial?

A. Just read of it, I heard them speak of it, that is all.

Mr. Wolf:

Q. You read the testimony in the former case?

A. I wouldn't say I read it all, I read some.

Q. You read a good deal of it?

A. Yes, sir.

Q. And your opinion is based on what you read of that testimony?

A. Yes, sir.

Challenge for cause renewed.

Challenge overruled.

To which ruling of the court counsel for the defendant except.

Exception allowed and bill sealed.    (10)

Counsel for defendant moved the court to compel the district attorney to forthwith return to the defendant one cap, one tan raincoat, one white shirt, one grey suit and some underwear now in the possession of the district attorney and which the district attorney has stated he will use as evidence in the trial of this case, which

articles of personal property were obtained by the district attorney, or some of his detectives, from the home of the defendant without a search warrant—the seizure and retention thereof, and the proposed use of which by the district attorney is an invasion of the constitutional rights of the defendant.

Motion refused.

To which ruling of the court counsel for defendant except.

Exception allowed and bill sealed.   (11)

By Mr. Simon:

I now move that the following testimony given by James Beech, on page 166, be stricken from the record:

Q. Did Mr. Exler make any purchases from you the week of Thanksgiving, 1912?

Objected to as immaterial, as Frank Exler is neither a witness nor a party to this case.

By Mr. Jackson:

This is to be followed by evidence showing the presence in the Exler stable of a bag, which we undertake to show was a bag delivered there by this witness.

No objection.

Question repeated.

A. Which Mr. Exler do you mean?

Q. Mr. Frank Exler?

A. The old gentleman?

Q. Yes.

A. Yes, sir, he dealt with me continuously.

Q. I have asked you of that week.

A. Yes, sir.

Q. What did he buy from you that week?

A. The last thing they took up there, on the 25th of November, was 100 pounds of bran, that comes in 100-pound sacks, and 178 pounds of shelled corn.

Q. What was the shelled corn in?

A. In a burlap sack.

Q. What sized sack?

A. Well, that would be over three bushels.

Q. More than a three-bushel sack?

A. Yes, sir.

By Mr. Simon:

I move the court to strike that evidence from the record because the district attorney stated that he would follow it by testimony which has not been produced.

By Mr. Jackson:

This is objected to, as the very same witness said he · did so deliver it.

By the Court: The motion is refused; partly on account of the testimony of Frank Neeper, reported on pages 386 and 387.

To which ruling of the court counsel for the defendant except.

Exception allowed and bill sealed.    (12)

By Mr. Simon: I now move the court to withdraw a juror and continue this cause on account of the introduction during the trial of a great deal of irrelevant, incompetent and immaterial evidence, which would tend to prejudice and inflame the jury's minds; and especially on account of the introduction of the testimony of James Beech, as to a feed sack, and as to the testimony of Mrs. Mary Lain, Mrs. Mabel Neeper, Mrs. Anna Probst, relative to a man riding a wagon down Grandview avenue on the evening of Wednesday, November 27, 1912; because all of the evidence is in its nature prejudicial to the accused, was impressed by the Commonwealth on the jury as being material, and tending to inflame the minds of the jury against the defendant.

Objected to.

Objection sustained, and motion to withdraw a juror refused.

To which ruling of the court counsel for defendant except.

Exception allowed and bill sealed.    (13)

During the progress of the argument of the district attorney counsel for defendant request an exception to the following language of the district attorney: "It is

hard work to defend a guilty man; it is always hard work to defend one as guilty as he."

Counsel for defendant move the court to withdraw a juror on account of the said improper remark.

By Mr. Jackson: At the point where I was interrupted by counsel for the defense I stopped, and not being addressed by the court, or stopped by the court, I finished the sentence that I was then uttering with these words, "as we will show he is by the evidence that we have offered in this case."

By the Court: The motion is refused.

To which ruling of the court counsel for the defendant except.

Exception allowed and bill sealed. (21)

By Mr. Jackson: What went on in that stable was never known until the body of Lillian Schadle was taken from underneath the waters of the Ardmore Dam, and never would have been known if it had not been. You know now what happened, you know now. So does everybody that heard this testimony—knows that that defendant sitting here inveigled that child into that stable by some means, by the means, I think, that I have suggested to you, because of his beastly passions—

By Mr. Simon: I object to the improper remarks of the district attorney.

By the Court: For what reason?

By Mr. Simon: Misstatement of the evidence.

By Mr. Jackson (continuing): This cruel deed was committed. That little girl was sent into eternity as a result of it. You tell me that there is a doubt of who did it, that there is a doubt of who did it? That there is a weak link in the chain? Never was there a stronger chain of evidence woven in this world than that which leads Ed Exler with the little girl that wore that blue coat into the Exler stable on the night of Thanksgiving, 1912, about twenty minutes after five o'clock—

By Mr. Simon: I object to the improper remarks of

the district attorney, and move the court to withdraw a juror.

By the Court: State the reason for your objection.

By Mr. Simon: The stating of facts which are not in the evidence in this case.

By the Court: State what you consider is not in evidence.

By Mr. Simon: There is no evidence that the little girl that was supposed to have gone into the stable wore that coat.   There is no evidence that the defendant in that stable assaulted that girl.

By the Court: The motion is overruled.

To which ruling of the court counsel for the defendant except.

Exception allowed and bill sealed.   (22)

By Mr. Jackson: (Exhibiting garments offered in evidence to the jury.)   "Justice cries out to me and cries out to you from every one of these dust covered garments, it cries out from the blood of the little victim, it cries out from the womanhood of this great Commonwealth, that men shall have the nerve, the stability, the force, to apply the evidence in this case and pronounce the verdict that it justifies, and that they will render a verdict of guilty as indicted against the defendant."

Counsel for the defendant object to these remarks as improper.   (23)

Q. Miss Hricz, I show you a photograph, Exhibit No. 30, and ask you to state whether or not any of the faces or forms there is a photograph of the little girl that you saw there with Edward Exler?

By Mr. Simon: If the court please, I object to this, because the photograph shown in that picture as being Lillian Schadle is marked with a big check mark, and I object to it on the ground that it is leading.

Objection overruled.

To which ruling of the court counsel for defendant except.

Exception allowed and bill sealed.

By Mr. Jackson:

Q. What is your answer?

A. This is the girl I seen coming down (indicating). (24)

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were (1) sentence of the court, (2) refusal of binding instructions for the prisoner; (6) refusal to accept the plea of former acquittal; (10, 11, 12, 13, 21, 22, 23, 24) various rulings as above quoting the bill of exceptions.

*A. M. Simon,* with him *Robbin B. Wolfe,* for appellant.—The verdict has no sufficient evidence to support it, because there is no direct evidence either to prove the corpus delicti or to establish the connection of the defendant with the assumed crime: Com. v. Byers, 45 Pa. Superior Ct. 37; Com. v. Exler, 243 Pa. 155; Com. v. Lavery, 247 Pa. 139; Pauli v. Com., 89 Pa. 432; Krause v. Com., 93 Pa. 418; Com. v. McManus, 143 Pa. 64; Com. v. Ruddle, 142 Pa. 144.

We contend that by the judgment of the Supreme Court in the case of Commonwealth v. Exler, 243 Pa. 155, the entire question as to whether or not the defendant Edward Exler did or did not commit a rape upon Lillian W. Schadle, or did or did not assault Lillian W. Schadle, is res adjudicata and has been judicially determined: Com. v. Exler, 243 Pa. 155; Com. v. Shoener, 216 Pa. 71; Com. v. Shoener, 30 Pa. Superior Ct. 321; Hilands v. Com., 111 Pa. 1; Dinkey v. Com., 17 Pa. 126; Com. v. Adams, 2 Pa. Superior Ct. 46; Hilands v. Com., 114 Pa. 372; Walters v. Com., 44 Pa. 135; Lafferty's Est., 230 Pa. 496; In re Gottesfeld, 245 Pa. 314; Com. v. Arner, 149 Pa. 35.

The manner in which the jury was selected over our objection and exception amounted to a standing aside of jurors: Com. v. Kay, 14 Pa. Superior Ct. 376; Com.

v. Grauman, 52 Pa. Superior Ct. 215; Com. v. Lavery, 247 Pa. 139.

There was error in the rulings on the challenge: Allison v. Com., 99 Pa. 17; Com. v. Fisher, 226 Pa. 189; Staup v. Com., 74 Pa. 458; O'Mara v. Com., 75 Pa. 424.

We contend that the court should have compelled the district attorney to forthwith return to the defendant certain clothing obtained by the district attorney without a search warrant: Weeks v. United States, 232 U. S. 383; Com. v. Meads, 11 D. R. 10; Boyle v. Smithman, 146 Pa. 255; Osborn v. First Natl. Bank, 154 Pa. 134.

The remarks of the district attorney were prejudicial to the defendant: Com. v. Bubnis, 197 Pa. 542; Com. v. Nicely, 130 Pa. 261; Com. v. Shoemaker, 240 Pa. 255.

*R. H. Jackson,* District Attorney, with him *Homer N. Young,* Assistant District Attorney, for appellee, cited as to the plea of twice in jeopardy: Hilands v. Com., 114 Pa. 372; Heikes v. Com., 26 Pa. 513.

Cited as to disqualification of juror: Com. v. Taylor, 129 Pa. 534.

Cited as to the district attorney's address: Com. v. Zappe, 153 Pa. 498.

OPINION BY KEPHART, J., October 11, 1915:

The defendant was twice tried. His first trial resulted in a conviction of murder in the first degree. This judgment was reversed by the Supreme Court in an opinion by Mr. Justice STEWART, Com. v. Exler, 243 Pa. 155. The second trial (and here appealed) was on the charge of rape under the Act of May 19, 1887, P. L. 128, which reads as follows: "If any person......who being of the age of sixteen years and upwards, shall unlawfully and carnally know and abuse any woman child under the age of sixteen years, with or without her consent, such person shall be adjudged guilty of felonious rape......" Appellant contends that if a verdict for statutory rape could have been returned upon the indict-

ment charging murder, he would have been in jeopardy under that indictment and could not again be placed in jeopardy under the present indictment. The defendant had been charged with common law murder, death occurring in consequence of consensual fornication or statutory rape. Com. v. Exler, supra, holds that murder and rape should be given their common law meanings. Rape as thus defined would not include statutory rape. The evidence presented at that trial fell short of establishing a common law rape, and had the defendant been then indicted for rape, without proof of want of consent, there could have been no conviction. The fact that the legislature calls consensual fornication felonious rape, would not cause it to be an ingredient or constituent element of common law murder without express legislative direction. It follows, therefore, that under the first indictment (excluding the question as to whether under an indictment for murder a verdict for rape could be returned) the defendant could not have been convicted of "statutory rape," it not being an element of common law rape, and therefore not an element of common law murder. Unless the evidence presented at the former trial could have resulted in a legal conviction of the offense there charged, or some offense forming a constituent part of the offense there charged, the prisoner would not be in jeopardy, though substantially the same evidence is used in another trial for an offense declared not embraced within the first indictment and insufficient to support any verdict thereunder: Hilands v. Com., 114 Pa. 372; Com. v. Shœner, 216 Pa. 71.

To carnally know and abuse any woman child under the Act of 1887, there must be penetration or an attempt to have intercourse. There must be at least contact of the sexual organs: Wharton's Criminal Law, 11th Ed., Vol. I, Section 684, p. 855; 33 Cyc. 1421. In this case the proof of penetration, the necessary fact to show that the crime was committed, and that the defendant was

responsible for that crime, rests solely on circumstantial evidence. The defendant, age twenty-five, with Lillian Schadle, aged twelve, was seen by a number of persons on the afternoon of November 27, 1912, going into a stable owned by defendant's parents. This was the last time the girl was seen alive. The next day her body was taken from a reservoir not far distant. The only external mark of violence disclosed by the autopsy and other testimony was the laceration of the perineum for the depth of an inch, or "a split through the perineum connecting the vagina and rectum" converting "both these openings into one large opening." "The splitting process started at the vagina" going downward and "was caused by the introduction of some object within the vagina. The most probable object was a male organ." On cross-examination Dr. Schildecker, the medical expert chiefly relied on by the Commonwealth, was asked if this injury could have been produced by falling on a protruding object or on a chair. This he admitted was possible but "very improbable" and said that falling on an object "would produce a much more severe injury." The essential element of this crime, which lacked positive evidence, was the fact of penetration. That penetration in a charge of rape, as the corpus delicti in any other case, may be proven by circumstantial evidence, is generally accepted as the law: Wharton's Criminal Law, 11th Ed., Vol. I, p. 870. "Circumstantial evidence is, in the abstract, nearly, though perhaps not altogether, as strong as positive evidence; in the concrete, it may be infinitely stronger": Com. v. Harman, 4 Pa. 269. Whether such evidence has been produced sufficient in quantity to overcome the presumption of innocence and reasonably free from hypotheses other than guilt, is for the court. The affirmative facts here shown are consistent with the hypothesis of penetration, their probative value being the degree of certainty created in the minds of the jury. Their weakness, if any, comes from the existence of possible causes other than the one

here claimed to be the producing cause of the injury. If these other causes are vaguely remote or not consistent with the proven facts, they cannot be considered as being sufficient to destroy this probative value of the affirmative facts shown, or stamp these facts as not being sufficient to present a prima facie case. These hypotheses other than guilt must produce disbelief, "that is, actual, and not technical disbelief; for he who is to pass on the question, is not at liberty to disbelieve as a juror (or a judge) while he believes as a man. It is enough that his conscience is clear": Com. v. Harman, supra. There were no marks, abrasions, or bruises in the region of the injury other than the wound described. If this laceration were made by falling on a chair, or on a protruding object, the body would show such bruises or abrasions in the region of this injury on other parts of the body; and as to child birth being a possible cause, under the evidence it was too remote for consideration. These possibilities, such as are urged as being sufficient to produce moral uncertainty as to the fact of penetration, are further removed, their influence lessened, and the existence of the disputed fact strengthened, when we consider the defendant's relation to the crime, particularly, that portion of his body, or clothing, that would, if he be guilty, be brought in contact with the female organs. We have his admission, made very shortly after the crime was committed, that there were blood spots on his trousers, which he stated came from urinated blood. There was testimony that blood was found on the tail and cuff of his shirt. There was no explanation of these inculpatory facts. Circumstantial evidence as to the fact of a crime committed, and its author, should be such as to exclude all rational theories but that the crime existed and the accused was its author; and in criminal cases great care should be taken that this proof should be clear and unequivocal. Such was the evidence here produced by the Commonwealth; it was sufficient to warrant a finding of penetration. We need not narrate

the facts showing this defendant to be the author of the crime. But one conclusion could be drawn therefrom. While some of the events standing alone would be of little evidentiary value, yet taken in connection with the proof of identification and the conduct of the defendant after the commission of the crime, they become important links of evidence bearing strongly in establishing the defendant's guilt. We refer to the evidence as to the disposition of the girl's body, and the likeness of the defendant to the person coming from the direction of this stable, driving a horse and dropping some object into the reservoir.

The eighth and ninth assignments complain of the manner in which the jury was selected. It arose in this manner: after the first juror was called, sworn on his voir dire, and examined, the district attorney objected to this practice as irregular and requested that the box be filled before any challenges were assigned. The trial court sustained the district attorney's contention, whereupon the remaining nineteen jurors were called and examined on their voir dire. Challenges were then made under the Act of 1901. The trial court, in its opinion overruling the motion for a new trial, held that the practice of examining jurors on their voir dire in homicide, was irregular in other criminal cases; that the regular practice in these cases was to call all the jurors into the box, examine them on their voir dire, and challenge therefrom, allowing challenges for cause where it could be shown to exist, and if not, the challenges to be regulated by the Act of 1901. This, we take it, is the customary practice throughout the Commonwealth. It is the practice in Allegheny County. Trial courts should be permitted to regulate this practice. Where this is done, or a method of procedure is established by long continued custom, and these regulations do not offend against the Act of 1901, and there is no abuse of discretion or impairment of some right of the defendant, such rules or methods will not be disturbed by this court. It

is quite clear there is no abuse of discretion. Unnecessary delay in the trial of cases is thereby prevented. The method of selecting jurors had a tendency to be more beneficial than harmful to the defendant. The manner of selection was not contrary to the Act of 1901. The practice regulating the selection of jurors in homicide is very well established, and in other cases it is sufficient under this act if all the jurors are called into the box and the challenges are made before the persons called are sworn as jurors.

The objection to juror Willis is not well founded. It does not come within the rule laid down in Com. v. House, 3 Pa. Superior Ct. 304, and the ruling of the trial court on the objection made was in accordance with Com. v. Crossmire, 156 Pa. 304 (10th assignment).

We agree with the trial court in its holding that the petition for the return of personal property did not set forth sufficient facts to bring it within the rule of Weeks v. U. S., 232 U. S. 383 (11th assignment).

The court withdrew from the jury's consideration the testimony of Beech as to the sacks of bran sold, and they were sufficiently instructed as to this testimony (12th and 13th assignments).

Assignments fourteen to nineteen, inclusive, complain of the charge of the court, and the answers to points. They are without merit; as is also the twentieth assignment, relating to the offer of the undergarments of the deceased, identified by the mother. For the purpose of identification, these garments were competent.

The objections to the remarks of the district attorney cannot fairly be the subject of error. He was the Commonwealth's officer, charged with an important duty. It included a presentation of the case as its circumstances demanded. We need not dwell on this further. The language used was a fair statement, considering the nature of the offense charged and the evidence presented (21st, 22d, and 23d assignments).

Much stress is laid on the testimony of Mary Hricz,

who identified the girl from the photograph in evidence. Whatever may be said as to the quality of this testimony, its weakness as developed through cross-examination, it was clearly for the jury's consideration. The point submitted in relation thereto, if affirmed, virtually withdrew it from the jury's consideration. The learned court's action on this point, and on the evidence of this witness, as well as its instructions to the jury on the question of reasonable doubt, were in no manner prejudicial to the defendant (24th, 25th and 26th assignments).

The twenty-seventh assignment is without merit. We have reviewed the evidence with much care and are fully satisfied that the jury was warranted in reaching the conclusion that a statutory rape had been committed on this young girl, and that this defendant was the author of the crime.

All the assignments of error are overruled, the judgment is affirmed.