## Commonwealth *v.* Bone, Appellant.

*Criminal law—Arson—Circumstantial evidence—Evidence.*

To sustain a conviction on an indictment for arson, where there is no direct evidence to establish a fire of incendiary origin or the connection of the defendant with any crime, the circumstantial evidence must be sufficient to implicate the accused in the burning, and this must be something more than evidence showing remote

connection between the accused and the crime, or evidence that merely raises a suspicion of guilty intentions; the mere fact that the defendant had a motive for causing the fire and a possible opportunity to carry out such motive is not sufficient of itself to convict; nor is the mere fact that the building burned was over-insured of itself sufficient to warrant. the conviction; and especially is this the case where it appears that the insurance was in the name of the father of the defendant, and the son might have been only remotely benefited.

*Evidence—Testimony of witness at preliminary hearing—Absent witness—Stenographer.*

On the trial of a criminal indictment it is reversible error to admit a transcript of the testimony of a witness at the preliminary hearing of the defendant before a justice of the peace, but absent at the trial, where it appears that the stenographer who took the testimony was merely a "public stenographer" and not an official court stenographer, and there is no offer to prove either the qualifications or the ability of the stenographer; and where it also appears that in the offer to prove the transcript of the testimony nothing is mentioned as to the form or the manner of the proceeding, or of the jurisdiction of the officer who took it.

Argued April 11, 1916. Appeal, No. 136, April T., 1916, by defendant, from judgment of Q. S. Crawford Co., Sept. T., 1915, No. 33, on verdict of guilty in case of Commonwealth v. Joe Bone, et al. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Indictment for arson. Before PRATHER, P. J. ·

The facts are stated in the opinion of the Superior Court.

At the trial Elizabeth Birchard, a witness for the Commonwealth, was asked this question:

Q.—Where do you live, Mrs. Birchard?

A.—In Cambridge Springs.

Q.—What is your business or occupation?

A.—I am a public stenographer and just now a school teacher.

Q.—State whether or not you acted as stenographer

and took the testimony of witnesses at the preliminary hearing in the case before M. H. Luce, the case of Commonwealth v. Joe Bone and Abe Bone?

A.—I did.

(Paper marked as Commonwealth's Exhibit "L.")

Q.—I show you Commonwealth's Exhibit "L" and ask you if this is a correct transcript of the testimony that was taken there by you?

A.—Yes, sir; it is.

By Mr. Best:

Q.—Did you transcribe the testimony yourself?

A.—Yes, sir.

I now offer in evidence the testimony of Laslow Sermitzsky, taken in the preliminary hearing before M. H. Luce, the squire, before whom the case was heard.

By Mr. Best: The objection is as to the competency of testimony taken by a stenographer employed by the Commonwealth before a magistrate, which is not a court of record, being introduced and read at the trial of this case. We claim that the Commonwealth could have had this witness here if they so desired and given us an opportunity to cross-examine him on a great many things we have ascertained since he testified at the hearing before the magistrate.

By the Court: This man wasn't subpœnaed, was he?

By Albert Thomas: He was subpœnaed for the September Sessions and didn't come at that time.

Objection overruled and bill of exceptions sealed for the defendants.

By Mr. Best: This testimony wasn't taken by anyone appointed by the court, or any sworn officer of the court, and if the notes of testimony are introduced, they should be read by the person at least who took them.

Objection overruled and bill of exceptions sealed for the defendants. (17)

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

44, (1916).] Assignment of Errors—Opinion of the Court.

*Errors assigned* were various rulings on evidence, including the seventeenth as above, quoting the bill of exceptions and (22) in refusing binding instructions for defendant.

*A. C. Stein,* with him *Otto Kohler, W. B. Best* and *A. C. Teplitz,* for appellant.—The corpus delicti was not proved. The evidence was insufficient to convict: Com. v. Byers, 45 Pa. Superior Ct. 37.

It was reversible error to admit the testimony of Laslow Sermitzsky given before the committing magistrate: Chamberlayne on Modern Evidence, Sec. 1702; People v. Carty, 77 Cal. 215; Kaiser v. Detroit United Railway, 167 Mich. 288; Quinlan v. Commonwealth, 149 Ky. 476; Austin v. Commonwealth, 30 Ky. Law Rep., 295, 298; People v. Hoke, 136 N. Y. Suppl. (App. Div.) 235; Odell v. Solomon, 4 N. Y. Suppl. 440; Com. v. House, 6 Pa. Superior Ct. 92; People v. Ah Yute, 56 Cal. 119; People v. Lee Fat, 54 Cal. 527; Ching Lum v. Lam Man Beu, 19 Haw. 363; Commonwealth v. Lenousky, 206 Pa. 277; People v. Oiler, 66 Cal. 101; People v. Randazzio, 194 N. Y. 147, 87 N. E. 112.

*Albert L. Thomas,* District Attorney, for appellee.— It was not error for the court to admit the testimony of Laslow Sermitzsky given before the magistrate: Com. v. Cleary, 148 Pa. 26; Cornell v. Green, 10 S. & R. 14; Chess v. Chess, 17 S. & R. 409; Rhine v. Robinson, 27 Pa. 30; Brown v. Commonwealth, 73 Pa. 321.

The evidence was sufficient to convict: Stitz v. The State, 104 Ind. 359, 4 N. E. 145; State v. Tenebom, 92 Iowa 551; 61 N. W. 193; Com. v. Hudson, 97 Mass. 565.

OPINION BY KEPHART, J., July 18, 1916:

The defendant was convicted of arson. There was no direct evidence to establish a fire of incendiary origin, or the connection of the defendant with any crime. The Commonwealth relied on circumstantial evidence to

secure a conviction.   The evidence as to the fact of a crime committed and its author, should be such as to exclude all rational theories except that the crime existed and the accused was its author, and in criminal cases great care should be taken that this proof should be clear and unequivocal: Com. v. Exler, 61 Pa. Superior Ct. 423.   When a crime charged is sought to be sustained wholly by circumstantial evidence, the hypothesis of guilt or delinquency should flow naturally from the facts and circumstances proved, and be consistent with them all.   The evidence of facts and circumstances must be such as to exclude to a moral certainty, every hypothesis but that of guilt of the offense imputed, or in other words the facts and circumstances must not only all be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence: Com. v. Byers, 45 Pa. Superior Ct. 37.   No general rule can be laid down as to the quantity of circumstantial evidence which in any case will suffice; and the mere fact that the defendant had a motive for causing the fire and a possible opportunity to carry out such motive, is not sufficient of itself to convict.   The evidence must be sufficient to implicate the accused in the burning and this means that there must be something more than evidence showing remote connection between the accused and the crime, or evidence that merely raises a suspicion of guilty intention: 5 Corpus Juris 579; State v. Ruckman, 253 Mo. 487.   It is the duty of the trial judge, after the evidence of the Commonwealth has been fully produced, to determine as a matter of law whether the proof has been sufficient in volume and quality to overcome the presumption of innocence, and thus put the accused to a defense: Com. v. Byers, supra; Com. v. Exler, supra. It is not a question of the weight of the evidence but of its sufficiency.   We have no doubt that in favor of the liberty of the citizen the court should, in a proper case, declare the evidence insufficient to convict: Pauli v. Com., 89 Pa. 432.

At the close of the Commonwealth's evidence, an effort was made to take the case from the jury, and our consideration will be limited to the questions there raised. The defendant was not the owner of the summer hotel building destroyed. He, and others, were in possession under the defendant's father. One of the features of the evidence relied on by the Commonwealth was the. fact that shortly before the fire the defendant took his trunk, with the insurance policies in it, to the depot. The defendant had been ordered to leave the premises by the sheriff, who had levied on all the property therein earlier in the day. There was nothing left for the defendant to do but leave. His wife packed his personal effects, which included wearing apparel, letters, papers, insurance policies, etc. His trunks, with others, were taken to the depot by the defendant, and later in the day his wife checked the trunks to Cleveland, Ohio. This is where the defendant and his family spent their time during most of the period that the hotel was not in use. The defendant intended to take rooms in the town until he could get the execution, on which the sheriff levied, satisfied, and the checking of the trunks was without his knowledge, or consent. Had the defendant left voluntarily, these acts would be highly significant, but when the sheriff assumed control, placed a man in charge of everything in the hotel, and the defendant was forced to leave, these acts lose their importance as inculpatory evidence.

The fire started in the linen room. The defendant was not seen in or about the linen room at any time before the fire. The room had been locked. There were two keys to it,—one in the possession of the maid, the other either lost or in the possession of Mrs. Bone, the defendant's wife. When the sheriff made his appraisement that day this room was opened by the maid and the sheriff, with the men that were with him, entered the room. After they left it was locked, and in so far as the evidence discloses the sheriff and the men with him were the last

known parties in the room.    If the door was locked after they left and was found unlocked when the clerk went to the room on the alarm of fire, how was Joe Bone, the defendant, to be connected with this act?    The maid stated that her key never left her possession.    She also states that Mrs. Bone had lost her key ten days before; though at the justice's office she said Mrs. Bone still had her key.    Whatever suspicion may arise from these acts, Joe Bone is on trial and he is the one that must be connected with the crime charged.

Two witnesses say that within a time ranging from thirty minutes to two and one-half hours before the fire Joe Bone was seen going and returning from the cellar with something in a pitcher.    One witness did not know what it contained and the other described it as being machine oil for use in an automobile.    This witness satisfactorily accounts for the oil.    Bone owned an automobile, which he used daily in connection with the hotel, and the oil for the car was kept in the cellar.    Viewing the questions here raised, the court can only point out the exculpatory inferences to which the evidence is susceptible, and that they are of sufficient importance to cause the evidence to lose its force as convincing evidence of guilt, and thus fail to exclude all rational theories that a crime was committed and that the accused was the author of it.    The weakness of the evidence as to the oil is the fact that no witness produced places the defendant anywhere near the linen room, which was on the third floor, with any inflammable substance, and the witness, who testified that he did not know what the pitcher contained, saw Bone on the steps, level with the kitchen, and does not know where he went, while the other witness definitely explains the facts.    This evidence would not, under all the circumstances, raise a suspicion of guilt.    The same may be said of the failure of certain of the fire appliances to work.    The connection of Joe Bone with these appliances was not shown and there were a number of others towards whom suspicion might be di-

rected through these incidents. They were associated with the defendant in and about this business. It did not appear, however, when the fire hose had been used before, and whether it had ever worked when used, and it was not shown that water could not be obtained elsewhere in the building. There are many accidents that could happen to cause the apparatus to fail and the water from the tank still be in the rest of the building. The theory that the pipe was shut off at the outlet from the tank on the top of the building is considerably weakened, in fact destroyed, when we give every fair consideration to the testimony of those witnesses who say that water could be drawn from other spigots. So with respect to the fire extinguishers. From what little was developed it would indicate deterioration which the charge undergoes from lapse of time, producing a white discharge without force. If it had been in good condition and tampered with, the contents must either have been removed or discharged, in which event the tank would be empty. And yet this defendant was not shown to be anywhere near the fire extinguishers.

The mere fact that the building was overinsured would not of itself warrant a conviction. It, with other evidence indicating a fire of incendiary origin, with some evidence of connection between the defendant and the crime, becomes very strong evidence of guilt; and this even where there is only a slightly remote benefit to be derived by the one charged. This insurance, however, was in the father's name, and remotely the son might have been benefited, but on this circumstance alone the case could not go to the jury. The evidence introduced by the Commonwealth to connect the defendant with the crime was not sufficient to make this evidence of value. But it is clear that the value of the property was not the value solely for hotel purposes but value for any purpose for which it might be used. The court erred in thus limiting the evidence of the defendant and in not permitting the defendant, through several of the offers made to

show the extreme bias of the only witness as to value, a rival hotelkeeper.

We have carefully gone over the testimony and have given to it every fair inference compatible with the Commonwealth's position, and we are satisfied that the connection between this defendant and the fire was not sufficiently shown to warrant a conviction. In so deciding we have considered considerable evidence that was improperly admitted, and without which the Commonwealth could not hope to succeed.

The testimony of a witness taken at a preliminary hearing, before a justice of the peace, may be used to supply the evidence of a witness who is absent or out of the jurisdiction of the State. The defendant, at such hearing, should be represented by counsel and be given a full opportunity to cross-examine the witness, or it should appear that such cross-examination had been waived with knowledge by the defendant of his rights. Knowledge would be presumed by the presence of counsel: Com. v. Lenousky, 206 Pa. 277; Com. v. Keck, 148 Pa. 639; Brown v. Com., 73 Pa. 321. The Act of 1887, which limits the testimony of absent witnesses to courts of record does not interfere with the common law rule which permits such evidence to be given where proceedings have been had before a committing magistrate. It must appear from the record that the testimony was adduced in a proceeding before a competent tribunal authorized by law to hear the matter. The record does not disclose such facts. In the offer to prove the transcript of the testimony nothing is mentioned as to the form or manner of the proceeding or the jurisdiction of the officer who took it. A coroner's inquest is not such a proceeding that would authorize the testimony taken at that proceeding to be used later in a court where a witness is absent or out of the jurisdiction: McLain v. Com., 99 Pa. 86. Other illustrations may be given. The justice's docket was the best evidence to show that a judicial proceeding authorized by law had taken place. When such

proceeding is had and the testimony is taken in short-hand, the report of the stenographer would possibly be the best evidence in the case.    But when so offered it must appear that the person who took the notes of testimony was a competent stenographer.    A designation as an official court stenographer, because of the manner of their appointment, would imply such ability.    Every "public stenographer" is not competent to take notes of the trial of a cause in court, nor would the title imply such qualification.    There should be some proof of service and ability.    There was none in this case.    The objection of counsel covers all these phases.    We need not discuss other objections.    The transcript of testimony was improperly received in evidence, but even if it had been properly received, as we view the case the evidence was not sufficient to warrant a conviction.

The judgment is reversed and the defendant is discharged without day.