Com. of Pa. *v.* Pane et al.

Argued April 10, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*William H. Coleman,* and with him *Harry R. Levy,* for appellant, cited: Commonwealth v. Byers, 45 Pa. Superior Ct. 37; Commonwealth v. Bone, 64 Pa. Superior Ct. 44; Commonwealth of Pennsylvania v. Johnston, 98 Pa. Superior Ct. 586.

*Earl R. Jackson,* Assistant District Attorney, and with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY JAMES, J., October 9, 1933:

The assignments of error raise the single question whether there was sufficient testimony to justify the defendant's conviction.

The appellant Jacob Greenfield was jointly indicted and convicted with one John Pane on the charge of arson in connection with an explosion and fire which did great damage to an apartment building in which John Pane was a tenant and Jacob Greenfield the renting agent. The building, located on White Street, McKeesport, comprised ten apartments, five on the first and five on the second floor. There were three entrances to the apartments; No. 908, the most southerly entrance through which four apartments were reached, two on the first and two on the second floor; No. 910, the center building, contained four apartments, two on the first and two on the second floor; and No. 912 contained two apartments on the first and second floor at the northerly end of the building.

According to the testimony of Frank Sample, Green-

field had notified the Sample family, who occupied the northerly first floor apartment at No. 910, to move to the first floor apartment at No. 912, giving as a reason that he wanted to repair the apartment, while the defendant testified that the reason for moving the Samples from one apartment to another was that they had been occupants of the premises for nearly two years, were considerably in arrears in their rent, and that the apartments were without gas and electricity and needed repairs—these repairs were never made. John Pane, co-defendant, executed a lease with Jacob Greenfield as the renting agent, on March 10, 1932, for the southerly apartment on the first floor of the entrance to No. 910 and was the only tenant in the No. 910 apartment at the time of the fire. On March 17, 1932, John Pane took out insurance on his furniture for $1,500 although he had never previously taken out any insurance. At the time of the fire John Pane and his wife and minor child were not at home and the other occupants of the separate apartments were aroused and taken from the building before the explosion and fire, which took place about midnight of Monday, April 11th, or early morning of Tuesday, April 12, 1932.

Shortly before the explosion other tenants in the building, by reason of the odor of gasoline, had made an examination of the cellar under these apartments and found gasoline leaking through the floor of the apartment which had formerly been occupied by Sample. They then effected an entrance into the building at No. 910 and discovered a burning fuse but were unable to remove the explosive substances attached to the fuse which were enclosed in a sack and fastened to the floor. They ran from the building and notified the remaining tenants before the explosion took place. After the fire three kegs were found in the ruins and gasoline was found in one of them.

The testimony showed that on April 11th **Pane had**

spent the evening in the Borough of Swissvale where he had visited from Sunday to Tuesday and returned to his home on Tuesday some time after the fire. A neighbor, Walter Connors, who lived at 906 White Street, testified that on the evening of Friday, April 8th, he saw two men near an automobile parked in front of 910 White Street and that he identified John Pane as one of the men who took out a keg from the automobile and took it in the hall inside of the door at No. 910.

There was conflicting evidence about a lease executed by Jacob Greenfield as renting agent and John Pane as the tenant. The Commonwealth contended that the name of John Pane was forged by Greenfield and also the name of an attesting witness, Tony Serack. Greenfield contended that a lease signed by John Pane was shown to the detectives and subsequently lost, which lease was later produced at the trial in a torn condition and patched together. In the meantime, Greenfield, having lost the lease which he had shown to the detectives and demand having been made by some one in the district attorney's office for him to deliver a copy of the lease to the district attorney's office and being unable to find it, he prepared a new lease to which he forged the name of John Pane and a witness, Tony Serack. There was also evidence that Greenfield, after the hearing before the justice of the peace and on the way to the county jail, said in the presence of the constable, "They put me in the mud, now let them take me out." Under this testimony appellant contends that there was not sufficient testimony to warrant the submission of the case to the jury as to him.

The Commonwealth contends that the chain of circumstantial evidence established three links which were sufficient to connect the defendant with the commission of the offense charged: 1. That the conduct of the appellant in requesting the moving of the Sample family from No. 910 to No. 912 made it possible for

the crime to have been committed; 2. the production of a lease by the Commonwealth which was admitted to be a forgery by the defendant; 3. the statement made by the defendant while in custody to the constable.

"When a crime charged is sought to be sustained wholly by circumstantial evidence, the hypothesis of guilt or delinquency should flow naturally from the facts and circumstances proved, and be consistent with them all. The evidence of facts and circumstances must be such as to exclude to a moral certainty, every hypothesis but that of guilt of the offense imputed, or in other words the facts and circumstances must not only all be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence: Com. v. Byers, 45 Pa. Superior Ct. 37. No general rule can be laid down as to the quantity of circumstantial evidence which in any case will suffice; and the mere fact that the defendant had a motive for causing the fire and a possible opportunity to carry out such motive, is not sufficient of itself to convict. The evidence must be sufficient to implicate the accused in the burning and this means that there must be something more than evidence showing remote connection between the accused and the crime, or evidence that merely raises a suspicion of guilty intention: 5 Corpus Juris 579; State v. Ruckman, 253 Mo. 487." Com. v. Bone, 64 Pa. Superior Ct. 44, 48; Spalitto v. U. S., 39 Fed. (2nd) 782; Com. v. Byers, 45 Pa. Superior Ct. 37, 39. "It is the duty of the trial judge, after the evidence of the Commonwealth has been fully produced, to determine as a matter of law whether the proof has been sufficient in volume and quality to overcome the presumption of innocence, and thus put the accused to a defense: Com. v. Byers, supra;" Com. v. Bone, supra; Com. v. Exler, 61 Pa. Superior Ct. 423, 434.

In the light of these principles we shall discuss the

several links upon which the Commonwealth relies to sustain the conviction of the appellant.

1. Appellant as the renting agent had the right to request the tenant Sample to remove from the apartment at No. 910 to another apartment or entirely away from any of the apartments, especially in view of the fact that although he had lived at No. 910 for nearly two years, he had paid a very small amount of rent and as the renting agent appellant had the right to lease the premises vacated to whomsoever he chose. Commonwealth contends that the defendant John Pane would not have been able to carry out his plan to burn these buildings if the Samples had not been moved to another of these buildings, yet this reasoning would be placing an undue burden upon landlords or renting agents to establish the bona fides of their acts, particularly in view of the fact that the Commonwealth failed to establish the amount of insurance upon the buildings or their value, but did establish the amount of insurance, the quantity of household furniture of the defendant John Pane and that he had never taken out fire insurance before, from which the jury could have inferred that the amount of insurance was in excess of the value of the furniture and was obtained solely for the purpose of defrauding the insurance company.

As was said by HEAD, J., in Com. v. Byers, 45 Pa. Superior Ct. 37, 42, "We are not to be understood as intimating that, under normal conditions, it is incumbent on the Commonwealth, in order to make out a case, to prove the existence of any motive at all, much less of an adequate one," but where as in the present case the Commonwealth does attempt to prove a motive as to one of the defendants, the failure to establish such a motive as to the co-defendant should be taken into consideration in determining whether his conduct is not entirely consistent with innocence. De-

fendant had no interest in the buildings or any insurance which might have been placed upon them.

2. Much stress has been laid to the fact that the lease which the Commonwealth produced was admitted to have been forged, but in passing upon the sufficiency of the testimony this must be considered in the light of the explanation given by the defendant, that when called upon by the district attorney's office to produce the lease he was unable to find the original lease and prepared a duplicate of the original; that upon his return a search was made and it was found outside with other papers and in its patched condition was produced at the trial. Had the defendant failed to produce any written lease whatever it would not have been a suspicious circumstance and we can add no greater weight to an admittedly forged lease in the light of the testimony on the part of the defendant.

3. The other link in the circumstantial chain is the testimony of Albert A. Markus, the constable, who accompanied the defendant Greenfield to the Allegheny County jail after a hearing before a justice of the Peace in connection with the charge against the defendant. Mr. Markus testified that he had Mr. Greenfield in his custody and while coming down to the county jail, Greenfield said to him, ''They put me in the mud, now let them take me out.'' What the conversation was that preceded this statement the record does not disclose; whether it was in response to questioning on the part of the constable or a part of a general statement in his conversation does not appear in the record. When, on cross-examination he was asked: ''Q. He meant you and the officers, didn't he?'' and replied, ''A. I can't tell you who he meant,'' we are persuaded that this statement, unconnected with the context of the previous conversation, was insufficient to permit the conjecture by the jury that others had employed or engaged him to commit this terrible

crime. If the officer to whom he made the statement was unable to determine what he meant, the jury should not be permitted to guess.

In view of the serious nature of the charge we have given the facts our most earnest consideration and are persuaded that although the testimony establishes strong suspicious circumstances, they fall short of that certainty required by the criminal law. No matter how strong the suspicions there must be substantial evidence of guilt beyond reasonable doubt. The facts and circumstances are not inconsistent with innocence.

The third assignment of error is sustained. The judgment is reversed and the defendant Jacob Greenfield is discharged without day.