## Commonwealth *v.* Gabriel, Appellant.

Argued December 14, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William T. Connor,* with him *John R. K. Scott* and *Hardie Scott,* for appellant.

*Raymond A. Speiser,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

Opinion by James, J., January 27, 1938:

Defendant was convicted and sentenced upon an indictment which charged him with setting up and conducting an illegal lottery. On this appeal, he contends that the evidence produced at the trial was insufficient to warrant the question of his guilt being submitted to the jury.

From the Commonwealth's testimony, the following facts were established. On September 13, 1935, at about 2.30 P. M., James P. Ryan and George F. Richardson, two city detectives, were watching the premises at 2627 North 34th Street, Philadelphia, when they saw a man drive up in an automobile and stop at the corner of a little street directly below this house. The driver got out of the car and went in 2627 North 34th Street, stayed about a minute and then came out and drove away. Ryan went to the front door and Richardson went to the back door and remained there about ten minutes before Ryan, who had broken in the front door, came through the house and admitted him. During that time no one left the house, and Richardson, peering through the glass in the rear door, saw defendant running around on the inside, to the back and then to the front of the house, frantically trying to get out. When the detectives got into the house, defendant was seized in the living room or parlor, at the foot of the stairs leading to the second floor. No other person was found in the house, or seen leaving it. The detectives searched the house from the cellar to the second floor and in the back room, on the second floor they found, on and under the bed, about a thousand slips, representing 11,875 plays, used in the numbers game, and an adding machine in the closet. Ryan testified that he did not see defendant enter the house. An examination showed that the cellar window and the windows in the rear of the house were all locked. Defendant, when asked by the

officers as to his presence in the house, stated he was there for the purchase of an automobile.

Mrs. Jessie Koundakian, the owner and occupant of the premises in question, when called by defendant, testified that she had rented the second story rear room to a salesman named Harry Levin, who paid one month's rent in advance and who occupied the room for three weeks and two days prior to the arrest of defendant. She further testified that Levin brought two suit cases to the premises and she had seen two suits of clothing in his closet and personal apparel in the bureau drawers; that she had seen an adding machine in the room; that she knew he had an automobile for sale; that she was at home most of the time, but it appears that when Ryan went to the house on various occasions, he could find no one there; that on the day of the arrest, she left at 11 A. M. and did not return until 10.30 that night; and that she has not seen Levin since the date of defendant's arrest.

Defendant testified that he was the owner of a restaurant at 822 Vine Street; and that he was told by one Harry Levin, a patron, that he had a Chevrolet car for sale, and was asked to come to the house to see it. On the day he was arrested, he went to the house and was admitted by Levin, with whom he was engaged in conversation about the car, when the door bell rang and he was told by Levin, "Don't open the door. Wait till I come down. I will open the door," whereupon the officers broke in and arrested him. When asked where Levin went, he replied, "He went upstairs." He had not seen Levin since the arrest.

Appellant does not question the sufficiency of the proof submitted by the Commonwealth to establish that someone had set up an illegal lottery, but argues that, taking into consideration both the Commonwealth's testimony and the explanation offered by him, the evidence was as consistent with his innocence as his guilt,

and, therefore, a verdict of not guilty should have been directed. In support of this position, appellant relies upon the following rule applicable to circumstantial evidence. When a crime charged is sought to be sustained wholly by circumstantial evidence, the hypothesis of guilt or delinquency should flow naturally from the facts and circumstances proved, and be consistent with them all. The evidence of facts and circumstances must be such as to exclude to a moral certainty, every hypothesis but that of guilt of the offense imputed, or in other words, the facts and circumstances must not only all be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence: *Com. v. Byers,* 45 Pa. Superior Ct. 37; *Com. v. Bone,* 64 Pa. Superior Ct. 44; *Com. v. Kolsky,* 100 Pa. Superior Ct. 596; *Com. v. Pane, et al.,* 110 Pa. Superior Ct. 367, 168 A. 510; *Com. v. Benz and Routley,* 318 Pa. 465, 178 A. 390; *Com. v. Bardolph,* 326 Pa. 513 192 A. 916. No general rule can be laid down as to the quantity of circumstantial evidence which in any case will suffice. It is the duty of the trial judge, after the evidence of the Commonwealth has been fully produced, to determine, as a matter of law, whether the proof has been sufficient in volume and quality to overcome the presumption of innocence and thus put the accused to a defense: *Com. v. Bone,* supra. Appellant also relies upon decisions of the Federal Courts, collected in *Graceffo v. United States,* 46 Fed. (2d) 852 and *Donovan et al. v. United States,* 54 Fed. (2) 193, as controlling in the present case. These cases recognize the general rule, above referred to, yet, in the final analysis, each case must be determined on its own facts.

If after the evidence of the Commonwealth has been fully produced and found sufficient, under this rule, it is not the duty of the court to withdraw the case from consideration by the jury, because the testimony offered by a defendant exculpates him from any complicity in

the crime. Whether the testimony offered by a defendant is to be believed or whether it creates a reasonable doubt, is a question for the jury. If the theory advanced by appellant is correct, a conviction could rarely be sustained, where a defendant denies any complicity in the crime. At the close of the Commonwealth's case, the facts established that on the premises a lottery was set up; that appellant, who lived approximately fifty blocks away, was found in the home of a stranger, behind closed doors, with the curtains drawn; that when an alarm was made, he rushed frantically from the rear to the front door, and although the front door bell was rung, the officer was required to force an entrance; that appellant stated he was there to see the man "who lived in the house"; and that no other person was found in the house, nor was any means of exit of the other person discovered.

As we view this record, the testimony offered by the Commonwealth was sufficient in volume and quantity to overcome the presumption of innocence and to require appellant to put in his defense. His defense was a question for the jury.

The assignments of error are overruled and the judgment is affirmed, and the record is remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.