**Commonwealth v. Pellett**

*Michael F. O'Brien,* Assistant District Attorney, for Commonwealth.

*David Durben,* for defendant.

MOUNTENAY, J., February 3, 1972.—Defendant was involved in an automobile accident in which the operator of another vehicle was killed. He was subsequently charged with violating section 1001(a) and 1004 of The Vehicle Code of April 29, 1959, P.L. 58, as amended, 75 PS § 1001(a) and 1004 (reckless driving and failing to drive on the right side of the highway.) According to the record at least, defendant pleaded guilty to these charges before a justice of the peace and paid a fine. Despite what appears to have been a plea of guilty before the justice of the peace, an appeal was taken, and, following a hearing de novo, defendant was found guilty of both offenses. The somewhat unusual procedural aspects of an apppal from a plea of guilty remains unexplained but are of no consequence here.

Defendant was later indicted on a charge of involuntary manslaughter, and the grand jury approved the bill of indictment. The case is now before the court on defendant's motion to quash that indictment. Defendant contends that The Vehicle Code violations of which he was convicted constituted included offenses within the crime of involuntary manslaughter, thereby barring his subsequent indictment for involuntary manslaughter under the doctrine of autrefois convict and further that the said indictment puts him twice in jeopardy for the same offense.

The proceedings on the summary offenses do not properly constitute a part of the record presently before us, nor does that record compel the conclusion that the death in question was a direct result of the same incident that gave rise to the summary offenses.

However, the case was argued on that basis and rather than to avoid the issue at this time, only to have it raised again at the time of trial, we make the necessary assumptions for the purpose of this opinion.

While it has been held that double jeopardy, as found in article I, sec. 10, of the Constitution of Pennsylvania applies only to capital crimes (Commonwealth ex rel. Papy v. Maroney, 417 Pa. 368 (1965)), there is no longer any doubt but that the fifth amendment guarantee of the United States Constitution against double jeopardy is enforceable against the States by way of the fourteenth amendment and is applicable as well to noncapital offenses as to capital offenses: Benton v. Maryland, 395 U. S. 784 (1969); Commonwealth v. Richbourg, 442 Pa. 147 (1971). See also Commonwealth v. Simeone, —— Bucks Co. L. Rep. —— (1971). In any event, whether we speak in terms of double jeopardy in the context of the United States Constitution or of the principles of autrefois convict and autrefois acquit as applied in the Pennsylvania decisions, the practical effect is the same: Commonwealth v. Bateman, 51 D. & C. 2d 754 (Cumberland County, 1971).

That one cannot twice be tried for the same offense is fundamental to our system of law. This rule covers not only identical offenses but extends also to so-called included offenses. That is to say, where a lesser crime is necessarily involved in a higher crime (as, for example, rape necessarily involves fornication, and robbery necessarily involves both assault and larceny), then a conviction or acquittal for the higher crime will bar a subsequent prosecution for the lesser or included offense: Commonwealth v. Simpson, 310 Pa. 380 (1933). It must be noted that the rule pertains also to situations where the sequence is reversed, that is, where the conviction or acquittal is

first had on the lesser crime and a subsequent prosecution is instituted as to the higher crime. See Commonwealth v. Arner, 149 Pa. 35, 39, 40 (1892), where the court said:

". . . The commonwealth having, with full knowledge of the facts, elected to proceed to trial and judgment for the minor offence, cannot now prosecute an indictment for the felony which included it. This is not a mere technical rule of procedure; it is a substantial one, which is founded in reason, and is in harmony with the constitutional mandate, that no person shall be subject to be twice put in jeopardy for the same offence."

See also Commonwealth ex rel. Papy v. Maroney and Commonwealth v. Bateman, both supra. Cf. Commonwealth v. Balles, 163 Pa. Superior Ct. 467 (1948).

Accordingly, if, in the case at bar, either of the summary offenses merges into the offense of involuntary manslaughter, then, absent any other considerations, defendant's conviction of the lesser offenses will constitute a bar to his prosecution for involuntary manslaughter.

Were The Vehicle Code violations in the instant case indictable crimes rather than mere summary offenses, defendant's convictions of these offenses might well have constituted a bar to the involuntary manslaughter prosecution on the theory that the offense of involuntary manslaughter necessarily involved the lesser offenses. See Commonwealth ex rel. Moszczynski v. Ashe, 343 Pa. 102 (1941); Commonwealth v. Cox, 209 Pa. Superior Ct. 457 (1967); Commonwealth v. Moon, 151 Pa. Superior Ct. 555 (1943). But see Commonwealth v. Bateman, 51 D. & C. 2d 754 (1971), holding that a violation of section 1038 of The Vehicle Code (turning out lights to avoid identification) did not necessarily involve a violation of section

801 (driving without lights during hours of darkness). The question, then, is whether a prior conviction or acquittal of a summary offense will ever bar a subsequent prosecution for an indictable offense arising out of the same transaction, even though the lesser offense might be necessarily involved in the higher offense.

One of the tests used in determining whether a conviction or acquittal of one offense will bar a subsequent prosecution for another offense is whether defendant could have been found guilty, under the first indictment, of the offense subsequently charged. For example, in Commonwealth v. Exler, 61 Pa. Superior Ct. 423 (1915), defendant was convicted of murder in the first degree for a death resulting in consequence of the statutory rape of a child under 16 years of age. The conviction was set aside and defendant subsequently charged with statutory rape. The court held that the prior conviction for murder did not constitute a bar to the subsequent conviction for statutory rape because, since consensual rape was not a constituent of murder, defendant could not have been convicted of the statutory rape under the murder indictment. Therefore, when subsequently indicted for statutory rape, he was not twice in jeopardy for the same offense. At page 433, the court said:

". . . Unless the evidence presented at the former trial could have resulted in a legal conviction of the offense there charged, or some offense forming a constituent part of the offense there charged, the prisoner would not be in jeopardy, though substantially the same evidence is used in another trial for an offense declared not embraced within the first indictment and insufficient to support any verdict thereunder: . . ."

See also Commonwealth v. Forney, 88 Pa. Superior

Ct. 451 (1926); Commonwealth v. Moon, supra, and Commonwealth v. Comber, 374 Pa. 570 (1953).

As an outgrowth of this principle, it has been held that a conviction for a summary offense does not bar a subsequent prosecution for an indictable offense. This served as an alternate basis for the decision in Commonwealth v. Bateman, supra, where defendant was indicted for turning out lights to avoid identification following a conviction of the summary offense of driving without lights during the hours of darkness. In Bateman, the court said, at pages 760, 761:

". . . It would be an anomaly indeed if an individual could escape prosecution for misdemeanor or a felony simply because he had been charged, pled guilty and paid a fine before a justice of the peace for a summary offense involved in his act.

"Pennsylvania follows the view that a conviction of a minor offense in an inferior court does not bar a prosecution for a higher offense over which the inferior court had no jurisdiction, the reason being that defendant was nowise in jeopardy as to the more serious offense in the summary proceeding: Commonwealth v. Bergen, 134 Pa. Superior Ct. 62; Commonwealth v. Rubin, 42 D. & C. 21, 27; Commonwealth v. Wolfendale, 43 D. & C. 230. See also 21 Am. Jur. 2d, Criminal Law, §185, 78 A. L. R. 1213."

It should be noted that the Bateman decision postdates the United States Supreme Court decision in Waller v. Florida, infra, though, again, it is recognized that the above quotation constitutes only an alternate basis for the court's decision.* The same

---

* The other basis for the decision in Bateman was that the indictable offense did not necessarily involve the summary offense, but we are not prepared to go that far in the instant case.

Judge Walsh did not participate in the decision in this matter.

principle served as one of the bases of the decision in Commonwealth v. Bergen, 134 Pa. Superior Ct. 62, 73 (1938), where the court said:

"While the decisions and authorities dealing with the pleas of former acquittal and former conviction almost universally relate to *indictable* offenses, we have, in this State extended it by analogy to summary proceedings before a justice of the peace, alderman or magistrate to the extent that an acquittal or conviction in such a proceeding will be a bar to a conviction on a subsequent summary proceeding brought *before the same or another inferior magistrate for the same matter.* See Marsteller v. Marsteller, 132 Pa. 517, 19 A. 344; Com. v. Beatty, 91 Pa. Superior Ct. 37. But we have found no well considered case where an acquittal in a *summary proceeding* before a justice or other inferior magistrate was held to be a bar to an *indictment* for a felony or misdemeanor in the court of quarter sessions or oyer and terminer, where on the trial of such indictment the defendant could not be convicted of the offense heard before the justice, because it was not an indictable crime or misdemeanor; and where the justice or inferior magistrate had no jurisdiction to try the crime of which the defendant was afterwards indicted in the court of quarter sessions or oyer and terminer. . . ."

In view of the foregoing, at least under Pennsylvania law, defendant's prior summary convictions under The Vehicle Code would not constitute a bar to the present indictment for involuntary manslaughter.

The question yet remaining is whether the Federal cases following Benton v. Maryland, supra, impose a higher standard than that already observed by the Pennsylvania decisions. The case currently attracting widespread attention on this subject is Waller v.

Florida, 397 U.S. 387 (1970). In the Waller case, defendant was charged by the City of St. Petersburg with a violation of two ordinances: first, destruction of city property, and, second, disorderly breach of the peace. He was found guilty in the Municipal Court on both counts, and a sentence of 180 days in the county jail was imposed.

Thereafter, an information was filed against the petitioner by the State of Florida charging him with grand larceny. It is conceded that this information was based on the same acts as were involved in the violation of the two city ordinances.

Before his trial in the circuit court on the felony charge, petitioner moved in the Supreme Court of Florida for a writ of prohibition to prevent the second trial, asserting the claim of double jeopardy as a bar. Relief was denied without opinion: Waller v. Circuit Court for the Sixth Judicial District in and for Pinellas County, 201 So. 2d 554 (Florida, 1967). Thereafter, petitioner was tried and was found guilty of the felony of grand larceny.

The District Court of Appeal of the State of Florida rejected defendant's claim that he had twice been put in jeopardy, although the charge on which the State court action rested "was based on the *same acts* of the appellant as were involved in the two city ordinances," because the court was of the opinion that a trial of an individual in a municipal court did not bar a prosecution of the same person in a proper State court thereafter.

In reversing the District Court of Appeal, Chief Justice Burger said in reaching this conclusion, page 390:

"We act on the statement of the District Court of Appeal that the second trial on the felony charge by

information *'was based on the same acts of the appellant as were involved in the violation of the two city ordinances'* and on the assumption that the ordinance violations *were included offenses of the felony charge . . ." (Emphasis* supplied.)

In concluding, Chief Justice Burger said, page 395:

"We decide only that the Florida courts were in error to the extent of holding that '. . . even if a person has been tried in a municipal court for the *identical* offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court'." *(Emphasis* supplied.)

Since Waller speaks in terms of both identical offenses *and* included offenses, we believe that were it not for the circumstance that reckless driving is a mere summary offense and not indictable, Waller v. Florida might require the conclusion that the prosecution in the instant case for involuntary manslaughter would be barred by defendant's prior conviction under The Vehicle Code, assuming, of course, that The Vehicle Code violations actually merged into the offense of involuntary manslaughter. And we cannot tell from the opinion in Waller whether a distinction existed under Florida law between the ordinance violation and the grand larceny charge similar to the distinction under Pennsylvania law between summary offenses and indictable crimes. Therefore, in order to determine whether this distinction is a valid one, we shall have to look further.

In Diaz v. United States, 223 U. S. 442 (1912), defendant was convicted of assault and battery before a territorial justice of the peace in the Philippine Islands prior to the death of his victim. The justice of the

peace had limited jurisdiction under territorial law. Subsequently, the victim died, and defendant was charged with homicide. After noting that the victim had not yet died at the time of defendant's conviction for assault and battery, the court said, at page 449:

". . . Besides, under the Philippine law, the justice of the peace, although possessed of jurisdiction to try the accused for assault and battery, was without jurisdiction to try him for homicide; and, of course, the jeopardy incident to the trial before the justice did not extend to an offense beyond his jurisdiction. All that could be claimed for that jeopardy was that it protected the accused from being again prosecuted for the assault and battery, and therefore required that the latter be not treated as included, as a lesser offense, in the charge of homicide, as otherwise might have been done under Philippine Comp. Stat. 3284. State v. Littlefield, supra. It follows that the plea of former jeopardy disclosed no obstacle to the prosecution for homicide."

It is recognized that the decision in Diaz predated the Waller decision by almost 60 years, but a similar question arose in the eighth circuit in the case of United States v. DeMarrias, 441 F.2d 1304 (1971), subsequent to the Waller decision. In that case, defendant, an American Indian in Indian territory, was convicted before the Standing Rock Sioux Tribal Court with operating a motor vehicle while intoxicated. Subsequently, he was indicted by a Federal grand jury for involuntary manslaughter. The opinion of the court proceeded on the basis that driving while intoxicated was not a constituent offense of involuntary manslaughter (with which we neither agree nor disagree—but see Commonwealth v. Prendergast, 48 D.

& C. 2d 66 (Delaware County, 1969) ), but Judge Lay in a concurring opinion, while expressing dissatisfaction with the basis upon which the majority opinion proceeded, concurred in the result because of the limited nature of the jurisdiction of the Tribal Court. At page 1308, he said:

". . . However, in the present case, even using the broader 'same transaction' test urged by the defendant there would not be double jeopardy. Here, it is clear that no single court (the federal district court or the tribal court) could have had original jurisdiction of all of the alleged crimes involved. As Mr. Justice Brennan points out in Ashe v. Swenson, supra, 397 U.S. at 453-454, 90 S. Ct. at 1199, 25 L. ed. 2d 469, the fundamental inducement behind the double jeopardy clause is the joinder at one trial of all of the possible charges that flow from a 'single criminal act, occurrence, episode or transaction.' Here such joinder would not have been possible. Manslaughter could not be tried by the tribal court, nor could the intoxication charge be brought in the federal district court. Under these circumstances defendant's reliance on the 'same transaction' rule is misplaced."

It should be noted that Commonwealth v. Bateman, supra, supports the same principle and that Bateman, too, post-dates the decision in Waller v. Florida. We hold, therefore, that defendant's conviction of a summary offense will not bar his subsequent prosecution for an indictable offense arising out of the same transaction whether or not the higher offense necessarily involved the lesser offense.

## ORDER

And now, February 3, 1972, defendant's motion to quash the indictment is dismissed.