## Commonwealth *v.* Joseph Raneri, Appellant.

*Criminal law—Arson—Evidence—Circumstantial evidence—Sufficiency.*

Upon the trial of defendants, indicted for arson, evidence that they were present in their house when it was discovered to be on fire, and were making no effort to extinguish the fire, together with evidence that inflammable materials, soaked with gasoline and oil were found at several places in the house, is sufficient to sustain a conviction. See next case.

Argued April 18, 1922.    Appeal, No. 134, April T., 1922, by defendant, from judgment of O. & T., Cambria County, Sept. Sessions, 1921, No. 9, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. Joseph Raneri.    Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Indictment for arson.    Before STEPHENS, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.    Defendant appealed.

*Errors assigned* were the judgment of the court, refusal to direct a verdict of not guilty, and the charge of the court.

*F. P. Martin,* for appellant.—It was the duty of the court not to submit the case to the jury under the grave doubt in the mind of the court: Com. v. Bone, 64 Pa. Superior Ct. 47; Com. v. Byers, 45 Pa. Superior Ct. 38; Com. v. Brown, 66 Pa. Superior Ct. 523.

*D. P. Weimer,* District Attorney, for the appellee, filed no printed brief.

OPINION BY LINN, J., July 13, 1922:

Joseph Raneri, his mother, Gueatana Raneri, and Tony Raneri in one indictment were charged with arson; they were tried and convicted. It was alleged that they had set fire to the dwelling house of Samuel Bennett and Mary Raneri. Each moved for a new trial. Tony Raneri's motion was granted; the others were refused. The two defendants were sentenced and each has appealed to this court. The only contention now made, to which we need refer, is the claim that the evidence is insufficient to sustain the conviction.

From the testimony, the jury may have found all or any of the following facts. The fire occurred in a dwelling house occupied by two families, the Raneris and the Bennetts. The Bennetts occupied six rooms on one side of the house, three on the first floor and three on the second; the Raneris occupied the other side, and there was no communicating door between the sides so occupied; below was a basement. The fire occurred between eight and nine o'clock in the morning of May 7, 1921, in the front room of the Raneris' side of the house. Azella Bennett, smelling gasoline, while in the Bennett side of the house, went out on the front porch and looked in a window on the Raneri side of the house and saw fire in the front room. She called her father, and finding the front door of the Raneri side locked, they entered that side by the rear or outkitchen door. In that outkitchen they found Gueatana Raneri. The Bennetts put out the fire; they seem not to have understood what Gueatana Raneri said, nor did she understand what they said. Between the outkitchen in which Gueatana was and the front room in which the fire was, was another kitchen, the door to which from the outkitchen was closed. A fire alarm was given and other people came. The Raneris had three trunks packed, two of them standing at the kitchen door. Some tools were also packed ready for removal. A witness said, "......everything was soaked with gasoline, the carpets and beds, and there was

a pan sitting there with about half a pint of gasoline in it." The chief of police, who was near when the fire alarm was given and immediately went to the house, testified with regard to the spot where the fire was extinguished, "I picked up a dinner bucket full of newspapers or some other kind of stuff that was piled against the door, around on the inside of the room, and the door was burned, charred black from the fire to the height of the door, and right beside the door, on the one side, or the side toward the kitchen it was saturated with gasoline......" He also testified that the basement of the building was saturated "with carbon oil," and contained waste paper and other inflammable stuff.

Appellant, Joseph Raneri, was in the kitchen when Constable Fry entered in response to the fire alarm. The constable talked with appellant about the packed trunks and was informed that appellant "had a letter from his wife over in the north of the county and he was going to take her belongings over." There was evidence that in the attic a pillow was found saturated with gasoline and that a hole had been knocked in the roof over the head of the stairs; it was described as a "fresh break in the roof," "a composition of tar roof." In this attic "there was an old mattress that was cut through the center with corn husks in it and it was saturated with gasoline together with a lot of old clothes." A witness, Tony Concilia, testified that at the time of the fire he was employed by appellant, and boarded with him in the house in which the fire occurred. He said they had not slept in the house the night before the fire but that he and Joseph and Gueatana arrived there on the morning of the fire at half past seven; that he had breakfast and went to work, leaving appellant and Gueatana in the house; almost immediately afterward, needing some tools, he returned to the house and found appellant and Gueatana still there, the former upstairs and the latter downstairs. He testified that then he smelled gasoline and oil in the house; he then "told Joe 'I smell gas.'"

He returned to work, and testified that "When I went back to work the second time where I got job, I heard them holler fire and I ran back to get my suit." Apparently there was no odor of gasoline and oil about the place near eight o'clock when Concilia went to his work the first time; the odor was there when he returned for the tools shortly afterward. This odor soon became so noticeable as to alarm the Bennetts in the other side of the house and led to the discovery of the fire by Azella Bennett. Joseph and his mother were then in the house containing around them very complete preparation for a fire; a fire occurred while at least one of them was in the house and she did nothing to extinguish it, and though appellant was not seen in the house while the fire was burning, he was found there almost immediately afterward.

It was the duty of the jury to find the facts; "the circumstances proved are consistent with each other and with the hypothesis that accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent and with every other rational hypothesis except that of guilt": 5 C. J. 580. We find nothing warranting our interference. What was recently said in Com. v. Puretta, 74 Pa. Superior Ct. 463 at 477, is pertinent: "It is worthy of note also that the defendants themselves declined to take the witness stand, as they had a perfect right to do, and to offer to the jury any suggestion or explanation that might have helped them to a conclusion that some third person had done the work which could have been so easily done by the defendants but which would have been attended with almost insurmountable difficulties if done by a stranger. The counsel of course were prohibited from commenting on this fact adversely to the jury but it cannot be supposed that tribunal remained oblivious of the fact of their silence any more than that this court should pass it by when considering the application of the defendants to be discharged without day, notwithstanding the verdict of the jury. Hu-

man judgments of course are not infallible, but if human experience and human reason may still be relied on to guide us to conclusions based upon evidence, we must find ourselves, as the learned judge below found himself, unable to say that the evidence left nothing for consideration by the jury and that the defendants were entitled, under the law, to an order discharging them without day."

The only other point mentioned in the statement of questions involved is that the court erred in granting Tony Raneri's motion for a new trial and refusing the other motions "without filing any reasons therefor or opinion......etc." While such opinion when filed is helpful to this court, neither the failure to prepare it on the one hand, nor the granting of the one motion and refusing the others, constitutes such abuse of judicial discretion as now to avail appellant. The assignments of error are overruled.

The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in that court at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.