## Commonwealth v. Kapsalis.

*Criminal law—Arson—Evidence—Sufficiency.*

1. Three hours after defendant left a restaurant leased and conducted by him, he owning the fixtures and personal property, there was an explosion and fire broke out instantly; when the fire department arrived, there were three distinct and separate fires; a pan containing two inches of kerosene, which, however, had not been ignited, was found in the kitchen; the personal property was undoubtedly overinsured, although the agent of the company had approved it, and at the time of the fire the defendant manifested no concern about his loss: *Held*, that a conviction for arson could not be sustained.

2. Circumstantial evidence as to arson must be sufficient to implicate the accused in the burning, and this must be something more than evidence showing remote connection between the accused and the crime, or evidence that merely raises a suspicion of guilty intentions.

Motions for arrest of judgment and for new trial. O. and T. Lehigh Co., Sept. Sess., 1925, No. 124.

*Dallas S. Gangewer*, for motions; *Orrin E. Boyle*, District Attorney, contra.

Reno, P. J., June 7, 1926.—On June 18, 1925, Louis Kapsalis leased a restaurant located at No. 244 Hamilton Street and purchased the fixtures therein for $296. Before purchasing, but while negotiations for its purchase were in progress, he insured the fixtures and stock for $3000, by having the existing policy in that sum extended for a further period and placed in his name. The fixtures were appraised by an agent of the insurance company prior to renewing the policy, who testified that, in his judgment, the fixtures and stock were worth the amount of the policy. There was no other evidence of the actual value of the property upon the premises.

On the evening of July 4, 1925, between the hours of seven and ten, Louis Kapsalis was in and about the restaurant. After ten o'clock, Nick Antonglow, who had been formerly the proprietor of the restaurant and was still employed as cook, remained at the restaurant until one o'clock, when he left, extinguishing all of the lights, except one in the cellar near the heater. Sometime after 1.15 A. M. there was an explosion in the restaurant, so violent that a clock which hung upon the walls of the restaurant was hurled into the

street, the cash register thrown from the counter to the street, the walls bulged out and cracked, the window panes blown out and the street wall demolished. Fire broke out instantly, and when the fire department arrived, it found two separate and disconnected fires on the first floor and another in the cellar. In the kitchen was found a cooking pan containing two inches of kerosene.

After the fire was extinguished, the fire chief went to the home of Mathias Kapsalis, a cousin of Louis Kapsalis, where Louis Kapsalis and Nick Antonglow resided. He asked for "Nick," who the chief thought owned the premises. Mathias heard the chief tell Antonglow that the restaurant had burned. Mathias knew that Louis owned the restaurant, yet, apparently, neither he nor Antonglow, who roomed with Louis, told Louis of the fire. Later, the chief again returned and asked for Louis, who then accompanied him to the fire. There Louis manifested no concern about his loss.

The foregoing represents a fair statement of the Commonwealth's proof, except that it should also be said that about two weeks before the explosion Louis Kapsalis, with Nick Antonglow, removed a Victrola, some chairs and other items of property from the restaurant. The evidence does not disclose who owned the property, but it does appear that at least some of it had been in a room on the second floor which was occupied by Antonglow, who removed therefrom about that time to the Mathias Kapsalis home.

Prosecutions for arson and cognate offences were instituted against Nick Antonglow, Mathias Kapsalis and Louis Kapsalis. Antonglow fled from the jurisdiction and has not been apprehended. Mathias was prosecuted upon the theory that he had a financial interest in the business, having owned the premises before Antonglow acquired it, but the jury acquitted him. Louis Kapsalis was found guilty. We are reviewing the record in his case upon motions for arrest of judgment and a new trial.

The first question that strikes the mind concerns the origin of the fire. Did the explosion precede or follow the fire? Was either the fire or the explosion incendiary? These questions the Commonwealth does not attempt to answer by direct evidence. It points to the violent results of the explosion and to the pan of kerosene and argues that these factors show an incendiary origin. But the conclusion contended for does not follow from the facts. The kerosene had not been ignited; there was no fire in the vicinity of the kerosene; hence, the kerosene could not have caused the fire. It is true that Louis Kapsalis did not know why the kerosene was upon the premises, and stated that kerosene was not usually used in the business. However, it is also true that Antonglow was in charge of the kitchen and was the last person upon the premises, and he probably is the only person who can explain its presence there. In any event, until the kerosene is shown to have had some causal connection with the fire, its presence upon the premises does not explain the fire. In its unignited state, it does not even serve as a basis for an inference that the fire was incendiary. Nothing else was found upon the premises which would indicate an incendiary origin.

The second factor that calls for consideration is that the fire occurred three hours after Louis Kapsalis left the premises. Even though the fire was incendiary in origin, there was not a particle of proof that Louis Kapsalis set in motion forces that resulted in the fire or explosion. The Commonwealth's theory was that Antonglow had ignited the fire as a result of a conspiracy with Louis and Mathias Kapsalis. The answer to this is: First, there is no evidence that Antonglow ignited the fire; and, second, that there is nothing in the case that supports an agreement or concert of action.

Commonwealth v. Kapsalis.

The case then comes down to this: First, that the property was undoubtedly overinsured, although the agent of the company had appraised it; and, second, that at the time of the fire Louis Kapsalis manifested no concern about the loss. Are these factors sufficient to support the conviction?

The Commonwealth relies upon several authorities to sustain its position, but a careful reading of them fails to convince us of their appositeness. In Com. v. Puretta, 74 Pa. Superior Ct. 463, a conviction of attempted arson was sustained where, in a grocery store to which only defendants had access, a barrel containing gasoline was found with a hole in the end next to the floor, from which some of its contents had run out and seeped through the floor into the cellar below, saturating sacks of flour. Three large wooden uncovered buckets were placed at various places on the floor, draped with several yards of paper, running from the top of each bucket to the others, with parts of it in the gasoline, and several feet of fuse were hung over the edges of the buckets, with one end in the gasoline and the other hanging out over the sides of the buckets, around which were tied bunches of loose unignited matches. It is easy to understand how, in that case, a jury and court would be convinced that preparations had been made for an incendiary fire and that they were made by the defendants; but here, as we have already pointed out, there is nothing upon which can be predicated an inference of the origin of the fire, much less of Louis Kapsalis's connection with it. In Com. v. Raneri, 79 Pa. Superior Ct. 438, the defendant was discovered in the burning house when the officers entered in pursuance of the fire alarm. Defendant was making no efforts to extinguish the fire, and inflammable materials soaked with oil and gasoline were found at several places in the house, and trunks packed in preparation for a journey were also found. Of course, a clear case of actual presence by defendant upon the burning premises cannot control the decision of this case.

To us, it seems that this case is controlled by Com. v. Bone, 64 Pa. Superior Ct. 44. It is not necessary to recite the facts of that case. In many respects they are quite similar to those of the case at bar. It is sufficient to quote the reporter's syllabus of the doctrine of the case to show how completely it controls this case:

"To sustain a conviction on an indictment for arson, where there is no direct evidence to establish a fire of incendiary origin or the connection of the defendant with any crime, the circumstantial evidence must be sufficient to implicate the accused in the burning, and this must be something more than evidence showing remote connection between the accused and the crime, or evidence that merely raises a suspicion of guilty intentions. The mere fact that the defendant had a motive for causing the fire and a possible opportunity to carry out such motive is not sufficient of itself to convict; nor is the mere fact that the building burned was overinsured of itself sufficient to warrant the conviction; and especially is this the case where it appears that the insurance was in the name of the father of the defendant, and the son might have been only remotely benefited."

This requires us to sustain defendant's motion for a new trial. But the motion in arrest of judgment must be overruled, for no defects upon the face of the record have been shown. However, our learned district attorney will undoubtedly terminate the prosecution by a nolle pros., unless he discovers additional testimony which will warrant another trial.

Now, June 7, 1926, the motion in arrest of judgment is overruled, the motion for a new trial is sustained and a new trial is ordered.

From Edwin L. Kohler, Allentown, Pa.