## Commonwealth *v.* Touri, Appellant.

Argued November 26, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*William A. Gray,* for appellant.—It is well settled that if a witness for the Commonwealth testifies differently from what is .expected, the district attorney may

52

cross-examine the witness for the purpose of attacking his credibility, and of destroying his testimony; but it is equally well settled that the testimony taken in such cross-examination is not substantive evidence, and that, therefore, the jury must not give it any weight in considering the verdict: McNerney v. Reading, 150 Pa. 611, 615-16; Stearns v. Bank, 53 Pa. 490; Com. v. Wickett, 20 Pa. Superior Ct. 350.

The court below should have withdrawn a juror on account of an improper remark made to the jury by the district attorney: Com. v. Shoemaker, 240 Pa. 255; Com. v. Ronello, 251 Pa. 329; Com. v. Nicely, 130 Pa. 261; Com. v. Polichinus, 229 Pa. 311; Com. v. Swartz, 37 Pa. Superior Ct. 507.

The instruction by the court on the effect of testimony tending to prove an alibi was erroneous: Com. v. Andrews, 234 Pa. 597.

*Lemuel B. Schofield,* First Assistant District Attorney, with him *Clare Gerald Fenerty,* Assistant District Attorney, and *John Monaghan,* District Attorney, for appellee.—No harm could possibly have been done defendant by the court's permitting the district attorney to cross-examine the Commonwealth's witness, for the reason that the court expressly charged the jury that the testimony so given was not substantive testimony.

The remark of the district attorney was not only not improper, but much more restrained and moderate than the courts have permitted the statements of the prosecutor to be: Com. v. Exler, 61 Pa. Superior Ct. 423; Com. v. Pennington, 249 Pa. 536; Com. v. Smith, 270 Pa. 583.

OPINION BY MR. JUSTICE SADLER, January 7, 1929:

Touri, alias Hines, the defendant, was indicted for the killing of George Lye on October 18, 1926, and convicted of murder of the first degree, the jury recommending life imprisonment as punishment, and this sentence was im-

posed. From the judgment entered, an appeal was taken, and we are now asked to pass upon various assignments of error directed to matters arising during the course of the trial, and complaints based upon the instructions of the court to the jury.

The deceased was at his home on the evening of the homicide, and, with his wife, had as guests several acquaintances, all of whom left prior to eleven o'clock. Shortly after that time, two women, Catharine Gower and Sophie Scoops came to the house, and soon thereafter four men, one of whom was the defendant. For several hours all of the occupants remained on the first floor conversing and playing cards, some of them drinking liquor, which they had brought to the house. About two o'clock in the morning Catharine Gower determined to go home, and called a taxi for this purpose. Touri insisted upon going along, and for ten or fifteen minutes demanded that he be permitted to accompany her, which request she refused. When the taxi arrived and the bell rang, Lye went through the hallway to the door, and was followed by defendant, called Touri, who at the trial claimed his name was Hines. The Gower woman left, and, after an interval of about three minutes, a shot was fired, which resulted in Lye's death. Immediately the defendant ran back from the hall, where he had followed the deceased, into the room in which the others were, with a smoking pistol in his hand. This he pointed at one of the visitors who tried to intercept him, but another one twisted his arm backward so that the weapon could not be used. The wife of the decedent attempted to hold Touri by his coat, but was pushed away, and he escaped through the rear kitchen door. Lye had been shot from the front through the abdomen, the weapon being held so close to the body as to set fire to his clothing, and he died shortly after. All the occupants of the house, except the wife, had left when the police arrived, about three in the morning.

Mrs. Lye had not been previously acquainted with the defendant, whom she knew only by the name of Touri. The police arrested a person so called, but when he was brought before her, she declared he was not the one desired. Later, she pointed out one Brown, and still later another, Katches, as similar in appearance to the assailant, but could not identify either. On January 21st following, the defendant was arrested in the early morning at his rooming place, where he was found about 4 A. M., dressed, wearing a hat and overcoat, with bed slippers instead of shoes, and having on his person a loaded revolver. He was positively identified by Mrs. Lye as the individual known as Sam Touri, who was present at her house when the murder occurred, and the one who had followed the deceased into the hall, where the shot was fired, and returned with the smoking pistol in his hand. Catharine Gower, who was present on the evening in question, had previously recognized a photograph of defendant as of the man who was in the house, though at the trial she limited her testimony to the statement that the defendant looked like Touri, except that his face was thinner. The Scoops woman testified in chief to the presence at the house of defendant, whom she identified, but, on cross-examination, said she was not sure he was the same person. Two other witnesses, both present at the time of the slaying, who might have given testimony as to the essential facts, were not produced by the Commonwealth, for the reason that one of them had located himself in another state, and refused to return, and the other, though sought by the Commonwealth, could not be found.

As opposed to the positive identification by Mrs. Lye, and the indefinite evidence of the Gower and Scoops women, there was offered alone the testimony of defendant, who said his name was not Touri, but Hines, that he did not know or shoot the deceased, and was not at the house of the latter on October 18th. To use his words, when asked as to this, he answered: "Well, my

conscience does not tell me I was there. Evidently I must have been some place else." He said that, on the night in question, "I could have been most any one of a dozen places. I just don't know exactly where I was." He was unable to name more than one such point. He denied acquaintanceship with any of the visitors at the Lye house when the murder was committed, except a most casual one with Leo Brown. His testimony was not of a character to impress the jurors with his credibility, and evidently did not raise a reasonable doubt in their minds as to the truth of the evidence to show identity produced by the Commonwealth. The question raised was one of fact, and, unless trial errors appear, or there was a failure on the part of the court to fairly and adequately instruct and safeguard the legal rights of defendant, the jury's conclusion is binding upon us, for it cannot be said there was not sufficient competent evidence presented by the Commonwealth, which, if believed, would warrant a verdict of guilty of murder of the first degree.

Complaint is first made that the jury was permitted to consider as substantive evidence the testimony of Sophie Scoops, elicited on cross-examination by the Commonwealth, which alleged surprise when she modified the statement first made. The witness had sworn that Touri was in the Lye house at the time of the murder, but, when questioned by counsel for the defense, said she was not sure. The acting district attorney then asked for an explanation of the change in her evidence, and whether she had not directly identified the defendant at the coroner's hearing. This was objected to unless the purpose was "to destroy her testimony so far as her substantive testimony [was] concerned." Defendant's counsel stated that if all of her evidence was to be thus eliminated because of proven contradictions of this one statement made by her, there was no reason why it should not be admitted. The same thought is expressed in the sixth point presented, answered generally in the

charge, and referred to in the sixteenth assignment. The court permitted the witness to be asked as to the different declarations made on another occasion, but expressly charged the jury that such proof was not to be treated as substantive evidence, but considered as affecting generally the credibility of the witness examined. Its charge as to the effect of testimony of this character was adequate and accurate, as admitted by appellant in his argument, and the fact that no specific reference, in discussing the matter, was made by the court to the particular question and answer, now complained of, is no reason for reversal. The jury was plainly told that the former statement made, and concerning which the witness was interrogated, did not furnish proof of the fact as previously detailed, and the instructions given correctly stated the legal rules applicable.

A second error in the admission of testimony is based on proof of a conversation had by Mrs. Lye with one of the visitors, known as Dr. John. When Touri,—identified as the defendant,—came with him into her house on the evening in question she asked why he had been brought there, the doctor previously having told her he was a gunman, and the witness said she would not allow him in the house, to which he replied that the man of whom he had spoken before was not the same person as the friend then with him, and, as a result, Touri was permitted to enter. This conversation, even if it could be said to have harmed defendant, since it was a declaration that he was not the criminal of whom Mrs. Lye had been told, was made in the presence and within the hearing of defendant. The witness was explaining his appearance at her home, and the only objection to the statement is based on the fact that it did not affirmatively appear that defendant heard it, though he was close to her and could have done so. It was not complained that the evidence was irrelevant or immaterial, nor was any other basis for rejection alleged except as above stated. Under the circumstances, no error was committed in per-

mitting the witness to detail how defendant happened to be at her residence.

Error is further asserted on account of the refusal to withdraw a juror upon request, because of a statement made by counsel for the Commonwealth in his closing address to the jury. As already noted, two possible witnesses of the shooting were not produced by the Commonwealth because they had left the jurisdiction of the court. The evidence disclosed due effort to secure their attendance, without avail. In argument, it was stated: "I will ask you to say that they are staying away from this jurisdiction for the purpose of helping this criminal." The court refused a motion to declare a mistrial because of this declaration in the closing address of the district attorney, to which ruling objection is now made. In the printed argument submitted, appellant's counsel contends that prejudice was thus unduly aroused by denominating the defendant as a "criminal," but, on the oral presentation, the complaint was rested on the allegation that there was no evidence that the witnesses were "staying away." Looking at the remarks from either aspect, it cannot be said that there was an abuse of discretion, in refusing to withdraw a juror, which would justify a reversal.

It is the duty of the district attorney to present his case fairly, and not make misstatements of fact or ask for the drawing of unwarranted deductions. When he does so, the defendant may justly complain, as in Com. v. Shoemaker, 240 Pa. 255, relied on by appellant, where the jury was not asked to make an allowable inference from proven facts, but it was said that there "were some things between defendant's counsel and the district attorney, which if divulged would certainly lead to his conviction." The prejudice to the defendant in such case was clearly apparent, and a new trial was awarded. So, it has been granted where the prosecuting officer stressed his personal opinion as to guilt: Com. v. Ronello, 251 Pa. 329. "The important question is whether

the prosecuting officer's remarks are mere assertions intended to inflame the passions of the jury, or statements that are fair deductions" from evidence presented: Com. v. Meyers, 290 Pa. 573, 580. In the present case the jury could draw an inference that the witnesses, whom the Commonwealth sought, might have absented themselves because they had the desire not to harm the defendant. It will be noticed that counsel did not say that this had been a proven fact, or that the defendant had in any way contributed to their absence. Complaints, such as now insisted on, are in the first instance addressed to the trial court, and only where its action discloses an abuse of discretion will a reversal be justified: Com. v. Rothensies, 256 Pa. 337; Com. v. Smith, 270 Pa. 583; Com. v. Pennington, 249 Pa. 536. This is not a case calling for such action. The court cautioned the jury that though each side argued "from their viewpoints, and [endeavored] to convince you, their arguments are not evidence. [Such declarations] are not part of the record, and it is the record" on which the verdict must be based. From what has been said, it follows that the fourth assignment must be overruled.

A statement made in the charge to the jury, referring to the weight to be given to the testimony of defendant (assignment eight), is urged to have been prejudicial to him, but an examination of the instructions as a whole,— and the charge must be so considered (Com. v. Welch, 291 Pa. 40),—shows no real ground for complaint. Nor can we see any justification for the suggestion (assignments 9 and 15) that the court permitted the jury to find a verdict of guilty, irrespective of the existence of a reasonable doubt, if they determined the defendant's alibi to be unsupported. On the contrary, the jury was repeatedly told that there could be no conviction unless all of the ingredients of the Commonwealth's case were so established. Assignments 11 and 14 refer to isolated sentences from the charge which, taken in connection with the context, show no error.

Again it is complained that the jury was told the character of the house of deceased,—intimated to be disorderly,—was not in issue. If the paragraph, in which the two sentences referred to appear, is taken as a whole, it is plainly unobjectionable. Neither the character of the Lye house, nor of the deceased or his wife, was involved. It is true that the latter was a witness, but the court carefully instructed concerning the weight that should be given to her testimony, as well as that of all others called.

Lastly, it is urged the court committed error in saying: "They [representing the Commonwealth] have produced witnesses, and they have accounted for witnesses which could not be produced, and it is the duty of the Commonwealth to produce all witnesses who are available, who can testify concerning the material facts." The contention is made that in stating that the prosecuting officers had performed their duty in producing all possible relevant testimony, the argument of defendant to the jury, that it was remiss in failing to put on the stand all eye witnesses, was destroyed. But the excerpt quoted must be read in connection with the sentence immediately following, which fully explains the meaning intended to be conveyed by the court, when it said: "They have endeavored to show you that they have produced those who were accessible, and [that] they have been unable to produce others." Taking the three sentences together, defendant has no ground of complaint.

We see no merit in any of the objections raised on this appeal. The case was fairly presented, and the applicable law accurately defined. The guilt or innocence of the defendant depended upon the proof, beyond a reasonable doubt, of his wilful killing of the deceased, and the Commonwealth furnished affirmative evidence of all facts essential to conviction. It was for the jury to say whether its witnesses were to be believed, and whether the identity of the defendant, known as Touri, was made clear as the one who fired the fatal shot, or if his denial

of any connection with the affair should be accepted. The verdict rested upon sufficient proof, and no error has been pointed out which would justify us in setting it aside.

The judgment is affirmed, with direction that the record be remitted for the purpose of execution.