Opinion by
 

 Keller, P. J.,
 

 The appellant, Claude Zotter, was tried and found guilty (1) on the sixth count of an indictment (No. 57 June Sessions 1937) charging him with being unlawfully concerned in the management, conducting and carrying on of a lottery, known as a “number game”; and (2) on another indictment, (No. 58 June Sessions 1937) charging him with unlawfully erecting, setting up, establishing, etc., a common nuisance, by operating, maintaining and conducting an unlawful lottery, known as a “number game,” etc. He was sentenced on indictment No. 57 to pay a fine of $1,000 and undergo imprisonment in the Lehigh County Prison for a period of one year; and on indictment No. 58 to pay a fine of $500 and undergo imprisonment in said prison for a period of six months to take effect after the expiration of the sentence on No. 57 aforesaid.
 

 The statement of questions involved brings before us two legal questions: (1) Whether under the evidence in the case the defendant’s point for a directed verdict of acquittal should have been affirmed and the defendant
 
 *298
 
 discharged; (2) whether the court erred in admitting evidence of sales of “numbers” slips made in the absence of the defendant.
 

 (1) Appellant bases his right to a directed verdict of “not guilty” largely on the decision of this court in
 
 Com. v. Coyne,
 
 115 Pa. Superior Ct. 23, 175 A. 291, which reversed the judgment of the court below and discharged the defendant. But the indictment in that case charged Coyne jointly with two others, Dolan and Goslin, with keeping a gambling house (Sec. 55 of the Penal Code); while the indictments in the present case were drawn under sections 53 and 52 respectively of the Penal Code. It is clear that keeping a gambling house requires the setting up or establishment of a house, room, etc. where people assemble to gamble, and in order to convict there must be evidence that the gambling house, room, etc. was set up, established or maintained by the defendant. The mere presence of a defendant in such gambling house, room, etc., is not enough to secure a conviction. There must be evidence from which the defendant’s proprietorship of the establishment may reasonably be inferred. In the Coyne case, there was no such evidence connecting Coyne with the proprietorship of the gambling house. The evidence on that score was confined to Dolan and Goslin, who were convicted and did not appeal. The evidence is set out somewhat fully on pages 25 to 27 of the report, and as we there stated, it would have been insufficient in a civil action in assumpsit to sustain a verdict against him as a partner in, or proprietor of, the establishment. Much less could it sustain a verdict of guilty on a criminal charge where it was necessary to prove him to have been a partner in or proprietor of the gambling house being carried on there.
 

 The “Numbers” game is a form of lottery. Its mode of operation has been explained in
 
 Com. v. Banks,
 
 98 Pa. Superior Ct. 432 and
 
 Com. v. Chirico,
 
 117 Pa. Su
 
 *299
 
 perior Ct. 199, 177 A. 591. There may be changes made in details from time to time, but the essential plan or scheme remains the same. It needs no house, room, etc. to be set up where people who play it must meet and assemble or where its operations are to be carried on. The number or policy slips can be sold anywhere — on the streets, in barber shops, news-stands, wherever the operators or “bankers” or “backers” can place a “writer” or a “pick-up man”; and the operators do not have to establish a definite place in which to carry on the lottery. All they need is a place in which to keep their books of slips, and to examine the slip copies or carbons turned in to them by the writers and see who, if any, have the lucky numbers, as determined by the plan of operation. And this place may be moved about as often as the operators choose. It does not have to have a fixed location from which to operate.
 

 Hence the evidence required to connect a defendant with being concerned in the carrying on of such a lottery does not have to be of the same kind or character as is required in order to sustain a conviction of keeping a gambling house. For example, see
 
 Com. v. Lanzetti,
 
 113 Pa. Superior Ct. 370, 173 A. 425;
 
 Com. v. Fusci,
 
 117 Pa. Superior Ct. 379, 177 A. 596, and
 
 Com. v. Gabriel,
 
 130 Pa. Superior Ct. 191, 196 A. 866, in all of which we affirmed the convictions and judgments, but in none of which would the evidence have been sufficient to sustain a conviction for keeping a gambling house.
 

 The Commonwealth contends that the evidence in the present case is sufficient to sustain the conviction under our rulings in Com. v. Lanzetti, Com. v. Fusci and Com. v. Gabriel. We must, therefore, examine it and see if it conforms to the standards set in those cases.
 

 The evidence would reasonably warrant the jury to find the following: On May 4,1937 two members of the State Police went to Allentown and placed premises No. 814 Maple Street under surveillance. The place was
 
 *300
 
 ostensibly occupied by ‘Hobart Training School.’ Between that date and June 10 they purchased lottery tickets, similar to those produced on the trial, from one Michael Volinsky, a numbers ticket seller, who was seen to enter 814 Maple Street on numerous occasions, carrying a dark colored brief case. The defendant, Zotter, was seen by the police in the vicinity of 814 Maplei Street and on May 24 was seen to leave the premises. On June 10, shortly before 4:00 o’clock in the afternoon, these policemen accompanied by other State Police under the command of a sergeant, and armed with a search warrant, came to 814 Maple Street and found the door locked. They knocked. Someone within raised the shade at the door. They identified themselves and asked to be admitted. The shade was quickly drawn and the door was not opened. Whereupon the police forced the door. They found in the room on the first; floor, three men, one of whom was the defendant, besides a bartender. The defendant had in his hand a typewritten adding machine slip such as is used in computing these “numbers” and another slip with figures in lead pencil. When he saw the police he dropped the slips on a bench nearby and tried to push them away from him. The police recovered them. A search of the first floor revealed 35 or 40 “numbers” books, containing 1,750 to 2,000 slips, in an unlocked cupboard back of the bar, and other slips showing the odds to be given. An open stairway led from this floor to the second floor, where there was an open door. Several policemen went upstairs and found Michael Volinsky and George Gianelli, sitting at a table on which was a dark brief case, a sum of money, an adding machine, about one hundred number slips and a pad on which were a series of figures — the paraphernalia used in the operation of the numbers game. The police arrested all the occupants. Volinsky and Gianelli pleaded guilty and were sentenced. The place, at the
 
 *301
 
 time, was undoubtedly being used as a numbers lottery headquarters.
 

 The defendant did not take the stand, but his counsel offered in evidence a blank membership card purporting to be of Hobart Training School, a card with the name, Hobart Training School, a seal and an impression of it purporting to be the corporate seal of Hobart Training School, and a petition which had been presented by the District Attorney to the Court of Quarter Sessions praying for the revocation of the club malt liquor license issued to Hobart Training School, which also set forth that Volinsky and Gianelli had pleaded guilty to the charge of conducting a numbers lottery and had been sentenced.
 

 In the Lanzetti case (113 Pa. Superior Ct. 370, 372, 173 A. 425), it was not shown that the appellant, Lucien Lanzetti, had been a frequent visitor to the lottery headquarters, as the others who were arrested there had been; or that he¡ had ever been there prior to the afternoon of his arrest. But the action of the police in arresting all present on the afternoon of the raid was sustained and all of them, including Lucien Lanzetti, were found guilty and none appealed except Lucien. In the present case the Hobart Training School was apparently only a “blind.” The place was closed and locked when the police arrived and it was not shown that any corporate activities were being conducted there at the time. 'Following the Lanzetti case, everybody on the premises was properly arrested as concerned in the operation of the lottery being carried on there. In the Gabriel case, the only evidence to connect the defendant with the operation of the numbers lottery being carried on at 2627 N. 34th Street was his presence alone in the house, his refusal to open the door to the police and his attempt to get out of the house by the rear. The evidence in that case clearly showed that the house was a numbers lottery headquarters. The defendant, Gabriel, testified
 
 *302
 
 that he had come to the house only a short time before to
 
 see a man named Levin
 
 about an automobile which he had for sale, but his conviction was sustained. In the Lanzetti and Fusci cases, the defendants, just as this appellant, did not take the stand nor call any witnesses in explanation or contradiction of the testimony for the Commonwealth.
 

 Without further elaboration of the facts, in the light of the above cases, we are of opinion that the testimony for the Commonwealth warranted the submission of the appellant’s guilt or innocence to the jury.
 

 (2) The evidence of the police as to the purchase on prior occasions of similar lottery or number slips from Volinsky, who was evidently a “writer” or “pick-up man” and was caught red-handed in the Hobart “School,” in the operation of the lottery on the day of the raid was admissible as showing intent and design and a common enterprise.
 

 We are of opinion, however, that both indictments relate to the same offense, and that if the defendant is convicted and sentenced for being unlawfully concerned in the conduct of a lottery, he cannot be given an additional sentence for establishing a common nuisance by operating the lottery so conducted. The offense of establishing a
 
 common
 
 nuisance is
 
 merged
 
 in the conduct of the lottery for which he was convicted and sentenced:
 
 Com. v. Baker,
 
 115 Pa. Superior Ct. 183, 188, 175 A. 438;
 
 Com. v. Clark,
 
 123 Pa. Superior Ct. 277, 296, 187 A. 237;
 
 Com. ex rel. Wendell v. Smith,
 
 123 Pa. Superior Ct. 113, 116, 186 A. 810;
 
 Com. v. McCord,
 
 116 Pa. Superior Ct. 480, 488, 489, 176 A. 834;
 
 Com. ex rel. Russo v. Ashe,
 
 293 Pa. 322, 324, 142 A. 317.
 

 In the appeal from No. 57 June Sessions, 1937, the judgment is affirmed, the record is ordered remitted, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied
 
 *303
 
 with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.
 

 In the appeal from No. 58 June Sessions, 1937, the conviction is sustained, but the sentence is reversed.