## Commonwealth *v.* Howard, Appellant.

Argued April 9, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Louis Little,* for appellants.

*Maurice H. Goldstein,* Assistant District Attorney, with him *Russell H. Adams,* District Attorney, for appellee.

OPINION BY DITHRICH, J., July 19, 1945:

Appellants, together with three other defendants, were arrested in a raid by State Police and an Allegheny County detective on premises properly described by the learned trial judge as a "numbers headquarters." All stood trial, were convicted, and sentenced, but only two of the five, namely, Sylvan Howard and Albert Errico, have appealed from the judgment and sentence. This is a joint appeal on a joint record and will be disposed of in a single opinion.

The arrest took place in a second floor apartment at 331 West Seventh Street, Tarentum, the residence of Albert Errico, one of the appellants. He was taken into custody as he was about to leave the building. He had in his pockets upwards of $500 in cash for which he was not able to furnish a satisfactory explanation, and in a desk with his personal papers were found paraphernalia generally used in the numbers business.

Sylvan Howard, the other appellant, was sitting in the kitchen of the apartment at a table with Arthur Errico, a brother of the appellant Albert Errico. On

the table were numbers slips approximating $1,341, a leather wallet containing $217, and other records used in connection with the lottery. Arthur admitted in a signed statement that he was the "head" of the numbers business being operated from his brother's apartment. While the officers were there, the two other defendants, Velma Edwards and John Oravec, came to the apartment for the purpose of turning in their share of the days numbers business.

Appellant Howard attempted to explain how he came to be seated at the kitchen table with the "head" of the business, having first removed his hat and coat, by saying that he was there for the purpose of securing from Arthur Errico $200 to be applied to his father-in-law's account in the Arnold Bank; that he visited the premises two, three, or four times a week but always on the business of his father-in-law who was always either lending to or borrowing money from Arthur.

There was additional evidence that appellants, on two succeeding days at about the same time in the afternoon and within the week preceding the raid, had exchanged paper bags or envelopes under circumstances that would support a reasonable inference that they were, in the language of the learned and experienced trial judge, "participating in numbers collections." On December 8, 1943, about 2:30 P. M., appellants, each operating a Cadillac sedan, drove into an abandoned gasoline filling station. After stopping there momentarily, Albert Errico drove his Cadillac to his apartment about a half square away. He entered the apartment and came out with a small paper bag in his hand which he handed to the appellant Howard who was by that time standing beside Albert's automobile. Just then Arthur Errico drove up in his Ford sedan. Howard then got into the Ford with Arthur and they drove away. The following afternoon at or about the same time, the three met under similar circumstances except that on this occasion Howard entered the apartment

with Albert Errico and came out of it with Arthur Errico and again drove away in Arthur's Ford sedan. At the time Arthur was carrying a package about the size of the one that was found on the table on the date of the raid, to-wit, December 14, 1943. A review of the record satisfies us that there was ample evidence to sustain the conviction. *Com. v. Lanzetti,* 113 Pa. Super. 370, 373, 173 A. 425.

The other assignments of error are based on alleged erroneous and prejudicial statements in the charge as follows: "The numbers racket is by many people and many officials regarded as the heart and center of crime in various communities of America today. Numbers barons have grown to a size where they undertake to tell government how it shall operate and that by reason of the tremendous wealth that has come into their hands. The numbers racket is no insignificant business. It is a business which is of great concern to all good citizens in every community of this land of ours and certainly in Allegheny County." That excerpt from the charge standing alone and not viewed in relation to its context would be prejudicial, but it has been repeatedly held that: "Isolated excerpts torn from the heart of the charge cannot be considered apart from their context, and if the whole is accurate and fair, the parts objected to do not form a proper basis for reversal: Com. v. Schurtz, 337 Pa. 405, 411; Com. v. Stelma, 327 Pa. 317, 323; Com. v. Glenn, 321 Pa. 241, 248; Com. v. Touri, 295 Pa. 50, 58." *Com. v. Jones,* 341 Pa. 541, 551, 19 A. 2d 389. A reading of the part of the charge immediately preceding the challenged part, clearly discloses that the learned trial judge was endeavoring to impress the jury with the distinction to be made between games of chance, raffles, or lotteries conducted for the benefit of charitable organizations, and the numbers business as being conducted solely for private and illegal profit. And immediately following the part of the charge complained of, the court said: "So you should

approach the consideration of this case with the determination that you will decide it not upon any views you may have had about the business beforehand, but on the basis that this is an importance case to the Commonwealth of Pennsylvania. It is important to the defendants too ...... I am not saying for a moment that in approaching this case and in considering it you should allow any thought of the danger of the numbers racket to the community to overbalance you against the defendants where the evidence would be the other way, ...... but what I am making a point of is that you should not treat lightly by any means this case and you should not find the defendants not guilty unless it be that after weighing all the evidence you come to the conclusion as to a particular defendant there is a reasonable doubt of his guilt ...... Nothing but a consideration of the law and the evidence in the case should weigh with you." And at the conclusion of the charge, after counsel for defendants had excepted to the parts assigned as error, the court carefully and painstakingly reiterated that when he used the expression "numbers barons" he was not in any way referring to the defendants or any one of them. As we have previously stated, the learned court properly referred to the residence of Albert Errico as a "numbers headquarters." That was clearly established by the evidence. Our reading of the charge and review of the entire record has convinced us that the attitude of the learned trial judge throughout the trial was fair and impartial and not biased and prejudicial to defendants.

The assignments of error are overruled; the judgments are affirmed; and it is ordered that appellants appear in the court below at such time as they may be there called and that they be by that court committed until they have complied with their sentences or any part thereof which had not been performed at the time the appeals were made a supersedeas.