## Commonwealth v. Johnston

Before Shughart, P. J., and Weidner, J.

*E. Robert Elicker, 2d,* Assistant District Attorney, for Commonwealth.

*John McCrea, 3rd,* for defendant.

SHUGHART, P. J., July 3, 1973.—Defendant, Robert W. Johnston, was convicted of driving under the influence of intoxicating liquor following a jury trial on February 27, 1973. Defendant subsequently filed a motion for new trial and in arrest of judgment which is before us for disposition.

At trial, defendant denied that he was the operator of the vehicle. Further, he produced a witness, Stimeling, who testified that he was driving the car at the time of the offense. It was conceded that Stimeling was present at the arrest and accompanied the arresting officer and defendant to the police station, but did not reveal at this time that he was the driver of the vehicle. The testimony was silent as to when, if ever,

prior to taking the stand at trial, Stimeling had admitted to being the driver of the car at the time of the offense.

In his closing address, the assistant district attorney argued, in effect, that Stimeling's testimony should not be believed because he had not come forward at time of arrest, preliminary hearing, or at any time until the day of trial and was a surprise witness. Defense counsel objected to this argument as prejudicial, placed the remarks upon the record, and now argues that the prejudicial nature of the remarks requires the grant of a new trial.

Defendant freely admitted that he was under the influence of intoxicating liquor at the time of arrest. The main factual issue in the case was which of the two occupants of the vehicle was the operator at the time of the offense. The arresting officer testified that defendant was the operator. Both defendant and Stimeling testified that Stimeling was the operator. This conflicting testimony placed the credibility of the witnesses squarely before the jury, requiring that both counsellors' efforts in the closing arguments be directed toward convincing the jury that their respective witnesses were more worthy of belief.

For analytical purposes, the assistant district attorney's statement amounted to two distinct but dependent inferences: (1) that Stimeling did not come forward at the time of arrest with his admission that he was the operator, and (2) that at no time thereafter, up to the time of the trial, did he come forward.

In Commonwealth v. Revty, 448 Pa. 512 (1972), the Pennsylvania Supreme Court stated the rule concerning inferences drawn by prosecutors in argument before the jury as follows: "[The prosecutor] may make *fair* deductions and suggest to the jury *appropriate* inferences *from the evidence*": Id. at 517. (Emphasis in original.) In that case defendant on direct examina-

tion stated he had been dishonorably discharged from the United States Army. On cross-examination he testified that the reason he was wearing an honorable discharge lapel pin was that the suit was borrowed and the pin was permanently attached. The prosecutor subsequently stated, then and in his summation, that the pin was worn in an attempt to deceive the jury. This inference was held to be impermissible and furthermore prejudicial to defendant, due to the presence of testimony to the contrary and in the absence of any evidence which reasonably supported that inference: Id. at 517. This result was justified since defendant had stated to the jury on direct examination that he was dishonorably discharged.

In the case at bar, the assistant district attorney's first inference, that Stimeling did not come forward at the time of arrest, is clearly supported by the evidence and is furthermore not contradicted by the testimony of any of the witnesses. Stimeling himself testified that he allowed defendant to "take the blame" and that he did not say anything about it until he had "sobered up" and that then he told defendant that they had "better go up and get this straightened away." Furthermore, the arresting officer testified that at the time of arrest Johnston had stated that he was the operator of the vehicle. Based on the evidence, the present case is distinguishable from Commonwealth v. Revty, supra, in such a manner that there can be no serious question as to the validity of the prosecutor's first inference.

The second inference, that Stimeling did not come forward at any time until the trial appears to be less clearly supported by the evidence, yet it is still not contradictory to the testimony of any of the witnesses. It is easier to analyze this inference by examining whether the jury could have drawn it. It has been

stated, concerning arguments of counsel to the jury that: " 'It is elementary that arguments must be based on facts which the jury is entitled to find from the evidence' ": State v. Brazeal, 99 Ariz. 248, 408 P. 2d 215, 218 (1965). The precedent of this rule concerning arguable inferences was established in Pennsylvania by the Supreme Court in Commonwealth v. Touri, 295 Pa. 50 (1929). In that case, the prosecutor argued to the jury that two witnesses outside the court's jurisdiction were not produced by the Commonwealth at trial because they were "staying away" in order to "help" defendant: Id. at 57. The court held this argument to be permissible because "In the present case the *jury could draw an inference* that the witnesses, whom the Commonwealth sought, might have absented themselves because they had the desire not to harm the defendant": Id. at 58. (Italics supplied.)

In the case at bar, under direct examination, Stimeling was asked to recount what had happened after he saw the police car. He testified:

"Well, I told Bob, I pulled to the curb, but I didn't get close enough and we changed seats right in front of the Oasis. I got on the other side. He come around. Bob took the blame for it because I didn't have no license at that time. We were both feeling pretty good. *I didn't say nothing until I got sobered up and began to think this thing over and I told Bob I think we better go up and get this straightened away.* There is no sense of him taking the blame for what I done." (Italics supplied.)

At this point, the questioning was directed to other aspects of the witness's testimony, and any reference to his admission that he was driving the car was avoided. However, the factual issue of the witness's coming forward having been raised and immediately ignored, the jury, and consequently the prosecutor,

could reasonably have inferred he did not do so at any time until the trial. Furthermore, having established unquestionably the validity of the first inference that Stimeling had not come forward at the time of arrest, the second inference follows logically, in the absence of other reference to that fact. The law of Pennsylvania provides that an inference may be drawn upon an inference: Commonwealth v. Bolger, 182 Pa. Superior Ct. 309, 315, 316 (1956). Thus, we find the inferences argued to the jury by the assistant district attorney were permissible.

Furthermore, even if the second inference had not been permissible, it would not provide grounds for a new trial unless it were shown to be prejudicial to defendant. In Commonwealth v. Hoffman, 439 Pa. 348 (1970), citing Commonwealth v. Meyers, 290 Pa. 573 (1927), the court stated that in order for a new trial to be granted due to erroneous remarks by the prosecutor:

" '[T]he language of the prosecuting officer . . . must be such that its unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that may be present in the case, and thus make them unable to render a true verdict' ": Id. at 355.

Otherwise stated, "if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all," then the verdict and judgment should stand: Commonwealth v. Anskate, 221 Pa. Superior Ct. 122, 125 (1972).

It is altogether too easy for an occupant of a vehicle, the driver of which was cited for driving under the influence, to come forward at a later time in a state of sobriety and state that he had been the driver, since

an adequate verification of his state of inebriation at the time of the offense is no longer possible. Therefore, in this case, where it is clear that the witness did not come forward at the time of arrest, the additional deduction that he did not come forward at any time before trial, adds little if anything to the attack upon the credibility of the witness.

It is incongruous that defendant did not exculpate himself on the scene if Stimeling was, in fact, the operator of the vehicle. Testimony of both defendant and Stimeling indicated that Stimeling had not only accompanied defendant to the police station, but also persuaded him to go voluntarily and remained there while he was questioned and tested for the offense. Defendant repeatedly testified he was under the influence, and that Stimeling was sober at 9:45 that evening and had only three beers thereafter. He also testified that he was not aware that Stimeling did not have an operator's license until they had arrived at police headquarters. This testimony indicates that if Stimeling were the driver of the car, there would be no reason for defendant not to have said so at the scene, in light of Stimeling's apparent better ability to survive the impending questioning and the Mobat Sober Meter test.

The jury was well aware of these circumstances and, therefore, the assistant district attorney's remark that Stimeling did not come forward until trial was of little consequence. The statement certainly did not prejudice the jury or render them unable to deliver a just verdict.

### ORDER OF COURT

And now, July 3, 1973, at 10 a.m., for the reasons set forth above, defendant's motion for new trial and in arrest of judgment is overruled and defendant is directed to appear for sentence at the call of the district attorney.